**OLD DOMINION STEVEDORING CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 1773.**

United States District Court
E. D. Virginia, Norfolk Division.
April 25, 1955.

Wolcott & Wolcott, Edward W. Wolcott, Norfolk, Va., for plaintiff.

L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., William F. Davis, Asst. U. S. Atty., Norfolk, Va., for defendant.

HOFFMAN, District Judge.

In an action instituted by plaintiff against defendant to recover the sum of $590 representing the balance alleged to be due plaintiff on a written contract for stevedoring services, defendant admits the performance of the services and the amount of the indebtedness, but contends that the sum of $590 is the amount expended by defendant to repair the starboard boom of the S. S. Booker T. Washington damaged by the alleged negligence of plaintiff in the performance of the stevedoring services. While the pleadings actually set forth a counterclaim, counsel admit that the amount in controversy is in the nature of a set-off as defendant deducted the $590 from the final payment made to plaintiff.

While it is fundamental that the burden is on the plaintiff to prove the performance of the contract for services rendered, the burden of proving negligent acts resulting in damage to the vessel's equipment rests upon the defendant under the facts of this case. Bardach Iron & Steel Co., Inc., v. Charleston Port Terminals, 143 Va. 656, 129 S.E. 687. As defendant admits the indebtedness due, subject to the right of set-off, the burden rests upon defendant to prove plaintiff's negligence.

The defendant, in addition to its allegation of negligence on the part of plaintiff, contends that plaintiff is now barred to assert relief in this Court by reason of Article XXI of the contract which reads as follows:

"Article XXI. Disputes.

"Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall be final and conclusive; provided, that, if no such appeal is taken, the decision of the Contracting Officer shall be final and conclusive. In connection with any appeal proceeding under

this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision."

It appears from the evidence that the accident occurred on May 14, 1952, and, on the following day, plaintiff caused a marine survey to be made by Alfred L. Nicholson. Upon completion of this report a few days thereafter, plaintiff delivered a copy of the report to the Contracting Officer and his counsel. Then followed the usual delays incident to Government operation until November 19, 1953, when the Contracting Officer addressed the following letter to plaintiff:

"Claim is hereby made by the Government in the amount of Five Hundred and Ninety Dollars ($590.00) for cost of stevedore damage to SS Booker T. Washington on 14 May 1952, while stevedores of the Old Dominion Stevedoring Corp. were performing loading operations.

"Under the provisions of Article 12, Liability and Insurance of subject contract, it is requested that check in the amount of Five Hundred and Ninety Dollars ($590.00) as indicated by the attached billing be made payable to the Treasurer of the United States and promptly submitted to this office in settlement of this claim."

Defendant urges that this letter is tantamount to a decision by the Contracting Officer in accordance with Article XXI and, as no appeal to the Secretary was perfected by the plaintiff within 30 days, the decison of the Contracting Officer was final and conclusive. There is no merit to this contention. The latter of the Contracting Officer makes no reference to Article XXI; it is, in fact, a claim or demand by the Government for reimbursement; no reference is made to the marine survey report admittedly delivered by plaintiff to defendant approximately eighteen (18) months prior thereto. If the letter of November 19, 1953, is construed to be a decision by the Contracting Officer under Article XXI, it is too arbitrary to be entitled to consideration by this Court.

There is no doubt but that Article XXI is binding upon the plaintiff under the decisions of United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192; United States v. Blair, etc., 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039; United States v. Callahan Walker Construction Co., 317 U.S. 56, 63 S.Ct. 113, 87 L.Ed. 49; Harte Co. v. United States, Ct.Cl., 91 F.Supp. 753, and Poloron Products v. United States, 116 F.Supp. 588, 126 Ct.Cl. 816. The sole question is whether a demand for payment of damage, together with a subsequent arbitrary deduction of the amount of damage from an admitted amount due the Contractor, constitutes a decision in writing. The contract contemplates a copy of the decision being mailed to the Contractor, and after "receipt of such copy", the Contractor has the right of appeal within 30 days. No copy was furnished in this case—only an original demand for payment. The short answer to this question is that the Contracting Officer, for reasons of his own, has never determined the dispute, if, in fact, a dispute did arise out of the contract.

We now come to a consideration of the facts of the accident which must be viewed in light of Article XII of the contract which reads:

"ARTICLE XII. *Liability and Insurance.*

"a. The Contractor

"(1) shall be liable to the Government for any and all loss of or damage to cargo, vessels, piers or any other property of every kind and description, and

"(2) shall be responsible for and shall hold the Government harmless from any and all loss, damage, liability and expense for cargo, vessels,

piers or any other property of every kind and description, whether or not owned by the Government, or bodily injury to or death of persons

occasioned either in whole or in part by the negligence or fault of the Contractor, his officers, agents, or employees in the performance of work under this contract. The general liability and responsibility of the Contractor under this clause are subject only to the following specific limitations.

"b. The Contractor shall not be responsible to the Government for and does not agree to hold the Government harmless from loss or damage to property or bodily injury to or death of persons:

"(1) If the unseaworthiness of the vessel or failure or defect of the gear or equipment furnished by the Government contributed jointly with the fault or negligence of the Contractor in causing such damage, injury, or death, and the Contractor, its officers, agents, and employees, by the exercise of due diligence, could not have discovered such unseaworthiness or defect of gear or equipment, or through the exercise of due diligence could not otherwise have avoided such damage, injury, or death.

"(2) If the damage, injury, or death resulted solely from an act or omission of the Government or its employees or resulted solely from proper compliance by officers, agents, or employees of the Contractor with specific directions of the Contracting Officer."

Admittedly, the responsibility for furnishing proper and adequate gear and equipment rested upon the defendant. It was equally the duty of plaintiff to exercise due diligence to discover any apparent defect of gear or equipment.

The S.S. Booker T. Washington was a part of the "dead fleet" from September, 1947, until July, 1951, when she was put back in service. The Chief Officer testified that he reported on the vessel on May 8, 1952 (six days prior to the accident), at which time he noted that the wire preventer guy had been replaced with old wire taken from a Government warehouse several weeks prior thereto. Defendant insists that only the wire preventer guy had parted and that the manila rope guy was intact. This statement is contradicted by the testimony of plaintiff's hatch-boss and by an entry in the ship's log which says:

"2002—14th May. #5 starboard boom wire guy and rope guy parted causing bend when boom hit after mast stay".

The determination of what happened to the rope guy is pertinent as all witnesses conclude that the damages to the boom could not have occurred unless the rope guy similarly parted. In the opinion of the Court, the log entry is controlling even though the Chief Officer expressed the opinion that this was an error which was subsequently corrected. The original log was not produced in evidence.

The plaintiff had been loading landing mats on board the vessel during the afternoon of the day in question and, at 7 p.m., the stevedoring gang changed. The accident occurred at approximately 8 p.m. The port side of the ship was next to the dock and, in the course of loading operations, it was necessary to use both the port and starboard booms; the port boom for the purpose of the initial lift, and the starboard boom to aid in swinging the load to the No. 5 hatch. In such process the strain on the port and starboard booms was practically equalized at some stage of the operation and, admittedly, the winch man operating the port boom was required to slack off as the starboard boom became a more prominent factor, in order to avoid an undue strain on both booms, particularly the starboard boom. While no winch man testified in the case, their absence is satisfactorily explained by the plaintiff and, in the absence of affirmative evidence showing a failure of duty

on the part of a winch man, the Court cannot assume negligent operation.

 The main point in issue is the alleged failure on the part of plaintiff to discover the defect in the wire preventer guy. The marine surveyor, Nicholson, stated that a "casual observation" would reveal a "rusty old wire". The witness, Lee, in charge of loading operations for plaintiff, testified that there were no means available to test the ship's equipment and that a normal inspection did not reveal anything broken. The evidence indicates that a "faded black" preservative had been applied to the wire an appreciable time prior to the accident, and that it was not unusual to see rusty wires used as preventer guys. It is, of course, fundamental that a rusted wire may still have some remaining life of service. In the judgment of this Court the requirement of the contract did not impose a duty upon plaintiff to test a rusty wire, or to refuse to use the wire under such circumstances. Even if the Court is in error as to this finding, the provisions of the contract prepared by the Government do not declare as negligence the failure of plaintiff to exercise due diligence in discovering the defect of gear or equipment. In simple language, this portion of the contract states that the Contractor (Stevedoring Corporation) shall not be responsible to the Government if there is joint negligence of the Government and the Contractor *unless* the Contractor failed to exercise such due diligence. In other words, the negligence of the Contractor is a prerequisite to the imposition of any liability in favor of the Government.

Article I(h) provides in part:

"The Government * * * shall furnish and maintain in good working order the following: * * * preventors on booms, * * *".

As the Court finds no affirmative evidence of negligence on the part of plaintiff, its officers, agents, and employees, it is immaterial to the determination of this case to find that plaintiff should have discovered the defect of gear or equipment.

Let a judgment order be prepared by counsel for plaintiff and, after submission for inspection to counsel for defendant, presented to the Court for entry in accordance with this opinion.