**UNITED STATES of America**

v.

**Clarke L. SMITH, individually and trading as C. L. Smith Aerial Surveys.**

**Civ. A. No. 20982.**

United States District Court
E. D. Pennsylvania.

June 4, 1957.

Louis C. Bechtle, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Laurence H. Eldredge, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This matter comes before the court on motions for summary judgment by both plaintiff and defendant.

The United States Army Map Services, an agency of the plaintiff, invited sealed bids to be received on or before May 28, 1947, for an aerial photography contract. Defendant Clarke L. Smith, individually and trading as C. L. Smith Aerial Surveys (hereinafter called "Smith"), submitted the low bid and was verbally notified on May 29 that he had been awarded the contract by which, for $99,-596.18, Smith agreed to take and deliver certain aerial photography to the plaintiff by December 31, 1948. By letter of June 10, 1947, the contracting officer confirmed the verbal notification.[1]

When the contract was signed on May 29, 1947, the defendant believed that the two P–38s owned by him would be sufficient to do the work.[2] The contract call-

---

[1]. In justifying its failure to complete the work in the time prescribed in the contract, defendant relies on the following language contained in a letter from the contracting officer at the time the contract was awarded to defendant:

"We are fully aware of the difficulties which you are likely to encounter in the execution of this contract, and we are prepared to offer you all possible assistance in the performance of this work. Please do not hesitate to call on us at any time if we may be of assistance." However, in the first place, the quoted language does not purport to vary the terms of the written contract. Secondly, the record indicates that the Government did cooperate in every way possible and offer assistance to defendant until the contract was terminated (see footnote 3).

[2]. When the Army Map Service accepted Mr. Smith's bid, the Contracting Officer

ed for photographing six blocks of the central portion of the United States from a height of 36,000 feet. As the work progressed, defendant encountered numerous problems in performing the specified aerial photography using the P–38s at such height and switched to using a leased, converted B–17.

The latter proved successful and defendant completed the photographing of one block of the work which was acceptable to plaintiff, but the owner of the B–17 defaulted in his lease with defendant and sold the plane to foreign interests. Defendant was unable to obtain the use of another B–17, or such other plane as defendant believed could adequately perform the required work, and defendant did not again attempt to use the P–38s.[3] On October 30, 1948, and on December 29, 1948, Smith wrote to the contracting officer, informing him of the

present status of the work on the contract and concluding that the job could not be completed by December 31, 1948, the end of the specified contract time.

Thereafter, on March 25, 1949, the contracting officer, by letter, terminated the contract.[4]

Bids were invited on the remaining five blocks on April 14, 1949, and contracts were entered into by plaintiff with the Fairchild Aerial Surveys, Inc. on May 11, 1949, and Mark Hurd Mapping Company on May 19, 1949. In these latter contracts, as distinguished from the earlier contract with Smith, the Government did not waive performance bonds.

Such latter companies successfully performed the required aerial photographic work and, by letter of December 15, 1950, the contracting officer notified defendant that the contractors who were awarded

knew the two P–38 planes were to be used to do the mapping job and made no objection. (Deposition of Captain Burchett, pp. 55–6, 59–60). The Contracting Officer, at the time of the taking of his deposition, still appeared to believe that the P–38s could have done the job, although the Commanding Officer of the Army Map Service appeared to differ with him (Deposition of Captain Burchett, pp. 80–3, 60–1, 75, 122).

3. The conditions of the contract imposed upon defendant the duties and risks of securing equipment, the risk of weather conditions, etc. Specifications, Sections 1–04a, 1–05, 1–11, 1–12, 1–15 (particularly first sentence), and 2–01. Although defendant, in certain parts of his brief (see p. 11), and plaintiff, in its reply brief, refer to the language "unforeseeable causes" used in Condition 21a, it is noted that this Condition only applies where the Government does not terminate the right of the contractor to proceed under Condition 13 and compensation is to be determined for the delays which the Government is willing to risk by continuing under the contract after the completion date. In spite of these provisions, the representatives of the Government did their best to help defendant secure a satisfactory plane. Deposition of Captain Burchett (see, for example, pp. 22–3, 86–92).

4. The termination letter of March 25, 1949, reads as follows:

"Gentlemen:

"You are hereby notified that your right to proceed under the subject contract for aerial photography of the Central United States project is terminated, effective upon the date of your receipt of this notification.

"This termination of your right to proceed is based upon your failure to complete the work as called for by the contract on the specified contract completion date. It has been determined that such failure is not due to any of the excusable causes set forth in the contract, therefore, this termination is effected under the terms of Condition 13 of the contract, 'Delays—Damages'.

"It is requested that you forward to this Office immediately, together with all Government furnished materials, the negatives, contact prints, photographic indexes and index negatives you have on hand in connection with this contract, so that this office may make an inspection for the acceptable segments, if any.

"This office will proceed to re-advertise for the completion of the contract, and you will be held responsible for any excess costs and damages incurred in such completion.

"Very truly yours,
"/s/ H. P. Burchett
"H. P. Burchett
"1st Lt. Corps of Engineers
"Contracting Officer"

the uncompleted work by readvertisement had completed their contracts and received payments thereunder, and "in accordance with the terms of Condition 13 of the subject contract, you are responsible for excess costs and damages incurred in the completion of these contracts," namely, $102,456.77.

By letters of March 8, 1955, and April 24, 1956, demands for payment of a debt of about $103,000 were made of defendant.

On July 3, 1956, the plaintiff filed suit in this court.

Defendant's answer, in effect, sets forth defenses that:

(1) The contract was experimental in nature and defendant was prevented from completing the contract within the required time due to unforeseeable causes beyond his control and without any fault or negligence on his part.

(2) Defendant was refused requested extensions of time by which he could have completed the contract in the same time it took under the later contracts awarded to others.

(3) By requiring performance bonds on the later contracts, some potential bidders were eliminated and much higher bids were submitted than if the contract had been readvertised under the same terms as the contract sued on, so that the damages claimed by plaintiff are excessive.

(4) The Statute of Limitations prevents the Government from pursuing this action.

■■■ As to the defenses labeled (1) and (2) set forth above, defendant may not rely upon the claims that the contract was experimental in nature and that the delay in performance of the contract was due to "causes beyond the control and without the fault or negligence of the Contractor," since these contentions, at the least, raise questions of fact that this court does not have jurisdiction to consider.[5]

Condition 14 of the contract provides the remedy of the defendant in disputes concerning questions of fact:

"14. Disputes.—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact which may arise under this contract, and which are not disposed of by mutual agreement, shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail a copy thereof to the Contractor. Within 30 days from said mailing the Contractor may appeal to the Secretary of War, whose decision or that of his designated representative, representatives, or board shall be final and conclusive upon the parties hereto. Pending decision of a dispute hereunder the Contractor shall diligently proceed with the performance of this contract."

---

5. Defendant contends that plaintiff could not have terminated the contract under Condition 13, pursuant to which the contractor may be held "liable for any damage caused the Government by reason of such termination," since Condition 13 expressly precludes the plaintiff from terminating the contract under it, if the delay in completion of performance of the contract "is due to causes beyond the control and without the fault or negligence of the contractor * * *." Instead, defendant contends that Condition 18, "Termination at the Option of the Government," providing fair compensation to be provided for the contractor, governs the termination of the contract, and no liability falls upon defendant. These above claims raise questions of fact which this court may not consider because of the terms of Condition 14. Even if the evidence in the record could be considered by the court, such evidence does not establish that reasonable men would be arbitrary unless they found that the delay was from causes "beyond the control and without the fault or negligence of the contractor." Appeal of Harlem Mfg. Co. (Armed Services Board of Contract Appeals No. 1425, Decision of 4/29/55) does not seem helpful because the contract involved had no specific date by which performance was to be completed.

The letter of March 25, 1949, giving notice of termination by the contracting officer, was a decision from which defendant could have appealed to the Secretary of War,[6] and in the absence of an allegation that the appeal procedure provided in the contract was in fact inadequate for the correction of the alleged unreasonable attitude of the subordinate

Government official, defendant's not having pursued the administrative appeal provisions of the contract bars him from asserting this defense to plaintiff's claim.[7] United States v. Blair, 1944, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039; United States v. Joseph A. Holpuch Co., 1946, 328 U.S. 234, 66 S.Ct. 1000, 90 L. Ed. 1192.[8] Thus, the effect of this dis-

6. Defendant's claim that the March 25, 1949, letter of termination did not constitute a written decision by the contracting officer of a dispute does not have merit in view of the positive language in such letter, as quoted above.

Cases such as Old Dominion Stevedoring Corp. v. United States, D.C.E.D.Va. 1955, 130 F.Supp. 662, 664, are distinguishable since, on the facts of this case, it does not appear that the termination letter by the contracting officer is *too arbitrary to be entitled to be considered* by this court as a decision of the contracting officer under the Disputes Clause. This contention could more properly be raised where there was no decision at all by the contracting officer. See, for example, Maxan Dress Corp. v. United States, Ct.Cl.1953, 115 F.Supp. 439, 442-443. The fact that the Disputes Clause states that "pending decision of a dispute hereunder the Contractor shall diligently proceed with the performance of this contract," does not prevent the contractor from deciding a factual dispute concerning excusable causes for delay in completing the contract within the specified contract time, and imposing the penalty of termination in his decision.

7. 41 U.S.C.A. § 321, relied on by defendant as giving this court jurisdiction to review an administrative decision, if such decision is alleged to be "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence," is inapplicable here where the effect of the Disputes Clause is to deprive the court of jurisdiction over such a dispute until the administrative process has been completed. See Atlantic Carriers v. United States, D.C.S.D.N.Y. 1955, 131 F.Supp. 1, rehearing denied 131 F.Supp. 5. In Langoma Lumber Corp. v. United States, D.C.E.D.Pa.1955, 140 F. Supp. 460, affirmed 3 Cir., 1956, 232 F. 2d 886, the plaintiff took an appeal from the decision of the contracting officer, which was not done in this case.

8. In United States v. Blair, supra, 321

U.S. at pages 736-737, 64 S.Ct. at page 823, the court said:

"Even if the contract of the Government superintendent or contracting officer, or their assistants, was so flagrantly unreasonable or so grossly erroneous as to imply bad faith, the appeal provisions of the contract must be exhausted before relief is sought in the courts. There was no finding or evidence that appeal to the head of the appropriate department or to this authorized representative would have been futile or prejudicial. Compare United States v. L. P. & J. A. Smith, 256 U.S. 11, 16, 41 S.Ct. 413, 414, 65 L.Ed. 808; Ripley v. United States, 223 U.S. 695, 702, 750, 32 S.Ct. 352, 355, 56 L.Ed. 614. We cannot on this record attribute to the departmental head the alleged unreasonable attitude of his subordinates. Nor can we assume that the departmental head would have adopted an arbitrary attitude or refused to grant respondent the relief to which he may have been entitled. Moreover, nothing in the record suggests that he could not effectively supervise his subordinates or provide full and prompt relief. Thus, absent a valid excuse for not appealing the disputed items to the departmental head pursuant to Article 15, respondent cannot assert a claim for damages in the Court of Claims. If it were shown that the appeal procedure provided in the contract was in fact inadequate for the correction of the alleged unreasonable attitude of the subordinate Government officials, we would have quite a different case. But here we must insist, not that respondent turn square corners, but that he exhaust the ample remedies agreed upon."

Relying on the decision in the Blair case, the Supreme Court, in United States v. Joseph A. Holpuch Co., supra, 328 U.S. at pages 239-240, 66 S.Ct. at page 1003, said:

"[The Dispute Clause] creates a mechanism whereby adjustments may be made and errors corrected on an administrative level, thereby permitting the Government to mitigate or avoid large dam-

putes clause is to deprive the courts of jurisdiction of any claim [9] covered by it, until the administrative procedure has been completed. Atlantic Carriers v. United States, D.C.S.D.N.Y.1955, 131 F. Supp. 1, rehearing denied, 131 F.Supp. 5.[10] For these reasons, the plaintiff is entitled to a finding in its favor on the issue of liability.

■ Defendant's third defense that the requirement of a performance bond in the later contracts "resulted in much higher bids being submitted than would have been submitted had the contract been readvertised under the same terms as the contract sued on" and that such "performance bond constituted a fundamentally different contract, involving a much higher bid price," raises a more difficult question. Plaintiff contends that the measure of damages is "the difference between the cost of the successor contracts * * * and the balance due the defendant had he fully performed, less the cost of the performance bonds * * *."[11] However, the fact that a performance bond was required under the new contracts, requiring time-taking contacts with the bonding company, may well have resulted in higher bids by the subsequent contractors, even after deducting the costs of the performance bonds, than would have been made if such bonds had not been required. The defendant is entitled to a trial to support its contention on the issue of damages as outlined in this third defense.

■ Finally, as to the fourth defense, the United States is not bound by the state Statute of Limitations. United States v. Summerlin, 1940, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283.[12]

## Order

And Now, June 4, 1957, It Is Ordered (a) that defendant Smith's motion for

---

age claims that might otherwise be created. United States v. Blair, 321 U.S. 730, 735, 64 S.Ct. 820, 823, 88 L.Ed. 1039. This mechanism, moreover, is exclusive in nature. Solely through its operation may claims be made and adjudicated as to matters arising under the contract. United States v. Blair, supra, 321 U.S. 735, 64 S.Ct. 823, 88 L.Ed. 1039; United States v. Callahan Walker Const. Co., 317 U.S. 56, 61, 63 S.Ct. 113, 115, 87 L.Ed. 49. And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court."

See Atlantic Carriers v. United States, supra; Fireman's Fund Insurance Company v. U. S. Army LST 34, D.C.S.D.N.Y. 1955, 132 F.Supp. 414; Old Dominion Stevedoring Corp. v. United States, D.C. E.D.Va.1955, 130 F.Supp. 662, 664. See, also, Bustos-Ovalle v. Landon, 9 Cir., 1955, 225 F.2d 878, 880; Olinger v. Partridge, 9 Cir., 1952, 196 F.2d 986; Johnson v. United States, 8 Cir.1942, 126 F.2d 242, 247. Cf. United States v. Moorman, 1950, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256.

9. Questions of law, though, may be properly presented to the court at any time and the contractor need not first exhaust his administrative remedies under the contract before raising such questions. See Halvorson v. United States, D.C.E.D.

Wash. 1954, 126 F.Supp. 898, 902; footnote 1 in the rehearing of the Atlantic Carriers case, at p. 5 of 131 F.Supp.; 41 U.S.C.A. § 322; and Allied Contractors v. United States, 1954, 124 F.Supp. 366, 369–370, 129 Ct.Cl. 400. Here, though, neither party to the contract claims that the decision of the contracting officer involved a question of law.

10. Exceptions have been made to this rule where the decision of the Administrative Board was pending and the Statute of Limitations would have run before the decision was rendered, but such is not the case before us. See Wessel, Duval & Co. v. United States, D.C.S.D.N.Y.1954, 126 F.Supp. 79.

11. See page 6 of plaintiff's brief, citing Steffen v. United States, 6 Cir., 1954, 213 F.2d 266.

12. The following briefs filed with the hearing judge are being placed in the file so that the appellate court may understand the positions taken by counsel at the time of the arguments on the motions for summary judgment: (1) Defendant's Brief on Three Separate Motions for Summary Judgment; (2) Brief in Support of Plaintiff's Motion for Summary Judgment; (3) Defendant's Memorandum of Law on Construction of Contract Condition 13; and (4) Plaintiff's Memorandum of Law.

summary judgment, filed March 11, 1957, is Denied, (b) that plaintiff's motion for summary judgment, filed December 27, 1956, is Granted as to the issue of defendant's liability, and (c) that the action shall proceed to trial on the issue of damages.[13]

13.  See Fed.Rules Civ.Proc. rule 56(d), 28 U.S.C.A.