**UNITED STATES of America,
Plaintiff,**

v.

**HAMMER CONTRACTING CORPORA-
TION and Aetna Insurance Com-
pany, Defendants.**

**Civ. No. 20387.**

United States District Court
E. D. New York.

March 25, 1963.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for plaintiff, Martin R. Pollner, Asst. U. S. Atty., of counsel.

Cowan, Liebowitz & Latman, New York City, for defendants, Bennett Frankel, New York City, of counsel.

BARTELS, District Judge.

This is an action under Section 1345 of Title 28 of the United States Code, brought by the Government for $4,565.32 plus interest, arising from an alleged breach of contract pursuant to which defendant Hammer Contracting Corporation (Hammer) agreed to perform certain landscaping work for the Veterans Administration Hospital (Hospital) in Brockton, Massachusetts. Certain undisputed facts, as set forth in the Pre-Trial Stipulation, are as follows:

On or about September 8, 1954, the Government entered into a written and binding contract No. V 1006C–21 with Hammer, pursuant to which Hammer was to perform the work in question. Under the terms and conditions of this contract the Government agreed to pay the sum of $67,971.08 to Hammer, in consideration for which Hammer agreed to furnish all labor, equipment and materials, and perform certain landscaping consisting of preparation of lawn seed bed, lawn bedding, and other items, and provide additional topsoil and preparation of lawn areas at the Hospital in Brockton, Massachusetts. Pursuant to Article 5, page G–3 of the Specifications attached to the contract, Hammer guaranteed all work under the contract for a period of one year, from the date the work was completed as established by the Government.

Pursuant to 49 Stat. 793, 40 U.S.C.A. § 270a, Hammer furnished a valid performance bond executed by defendant Aetna Insurance Company (Aetna) in the sum of $50,978.31, under which Aetna undertook to secure the proper performance of the contract by Hammer, as shown on pages of the contract marked "1–18" and "1–19".

The Government established October 18, 1954, as the date on which the work under the contract was completed, thus establishing October 18, 1955, as the date through which said work was guaranteed by Hammer, and the Government also fully paid Hammer for its services under the contract.

Pursuant to Article 14, page DS–2 of the Specifications attached to the contract, the Government agreed to maintain the planting area between the completion of the work and the end of the guaranty period.

By letter of April 8, 1955, Hammer was advised by the Government that numerous lawn areas were not satisfactory, and was requested to take the necessary corrective action under the guaranty provision of the contract. On May 25, 1956, Hammer was notified that the Hospital was authorized to proceed with the work and costs would be charged to its account in compliance with Article 5, page G–3 of the contract.

The above are the facts agreed upon by the parties. In addition, the parties adduced at the trial further evidence with respect to the contract, the performance thereunder by Hammer, the maintenance service by the Government, and the corrections of the deficiencies made by the Government.

While the pertinent portions of the contract are referred to in the stipulated facts, a more detailed recital is necessary.

(1) Article 5, page G–3, in addition to requiring Hammer to landscape the grounds around the Hospital, provided that Hammer guaranteed all the work under the contract for a period of one year from the date the work was completed and, further, that whenever work is guaranteed " * * * the contractor whenever notified by the Contracting Officer, must immediately (1) place in satisfactory condition in every particular any of the guaranteed work * * ". This Article further provided: "The opinion of the Contracting Officer as to the liability of this contractor under any such guaranty or as to the satisfactory fulfillment or compensation for the non-fulfillment thereof will be final, subject to written appeal by the contractor, within thirty (30) days, to the Administrator, whose decision will be final and conclusive upon the the parties hereto, subject to Public Law 356, 83rd Congress, approved May 11, 1954, 68 Stat. 81."

(2) Article 14, page DS–2, specifically provided that "The Government will maintain plantings between completion of the work and the end of the guaranty period."

(3) Article 5, page G–3, also provided that "all work under this contract shall be guaranteed for a period of one (1) year from the date the work is completed, as established by the Government."

After the work was completed and before expiration of the one-year guaranty period, certain portions of the landscaped area covered by the contract failed to grow grass.

The Government claims that since the barren areas appeared during the guaranty period, Hammer was obligated to take corrective action to bring the work into compliance with the contract requirements and, moreover, that the Contracting Officer's opinion to that effect as contained in the letter of April 8, 1955, was final and conclusive under Article 5, since Hammer failed to appeal that decision. It is interesting to note, in passing, that the last contention concerning the finality of the Contracting Officer's opinion was raised for the first time at the trial.

On the other hand, Hammer claims that it fully complied with the provisions of the contract on its part to be performed, and that any area that was or became barren during the guaranteed period resulted from the failure of the Government to maintain the land as required by Article 14 and also to exterior forces and to other causes excepted from the guaranty under Article 5.

### I.

Where there has been a formal and final decision of the Contracting Officer as to a factual issue in accordance with a disputes clause in a Government contract and a failure to appeal that decision, the United States may be granted summary judgment on the issue of liability since the failure to pursue an administrative appeal deprives the Court of jurisdiction on that issue, United States v. Joseph A. Holpuch Co., 1946, 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192. Such a final decision may be asserted by the United States affirmatively as well as defensively, United States v. Smith, E.D.Pa.1957, 152 F.Supp. 322. Even though the contract with the Government may state that the opinion of the Contracting Officer shall be final unless appealed, such opinion cannot be arbitrary, cf., Old Dominion Stevedoring Corp. v. United States, E.D.Va.1955, 130 F.Supp. 662. In the present case, the first letter in which the Contracting Officer notified the contractor that additional work was required, was dated April 8,

1955. That letter contained no reference to Article 5 and contained no recital as to the basis of the officer's opinion except that it stated that the deficiency was due to "inferior or defective workmanship or material". After a series of letters between the parties, the Contracting Officer in a letter dated April 23, 1956, stated that he did not agree with the opinion of the contractor that the work would ultimately be satisfactory and demanded that the contractor remedy the situation and if it did not, then the Government would have someone else do it and the contractor would be charged. While the letter stated that no further notice would be furnished, a similar statement to that effect had already been made to the contractor in a letter dated October 13, 1955, and there was no indication that the letter was an Article 5 opinion. Another letter sent to Hammer on May 25, 1956, advised it that the Hospital had been authorized to proceed with the corrective work and that the full cost of the same would be charged to Hammer's account. Thereafter a voucher dated August 6, 1956, was mailed to Hammer for the sum expended for the corrective work at the Hospital. Neither the contract itself nor the regulations governing the Veterans Administration provided for sending the contractor a copy of the final decision and notifying the contractor of its right to appeal therefrom.

The right of the Government to preclude this Court from reviewing the issue of liability upon failure of the contractor to appeal within thirty days to the Administrator upon receipt of the so-called "final letter", is a drastic remedy and should be strictly construed and strictly complied with. It is clear that it was the intention of the contracting parties that the contractor should, in some form or another, be made aware of the fact that the Contracting Officer in his so-called "final letter" intended to rely on his opinion as the final opinion which would be conclusive if not appealed.

In this case the Government relies on several letters taken together to indicate the finality of the Contracting Officer's opinion. However, neither the letter of April 23 nor that of May 25 by itself seems to express that finality which would charge the contractor with notice of its conclusive nature unless appealed. The last communication consisting of a voucher to Hammer is not sufficient since it was not an opinion letter but merely a demand for payment. The Court believes that if the Government wished to take advantage of a clause of this nature it was obligated to notify the contractor in clear and unequivocal terms that its opinion letter was the final and conclusive one, referred to in the contract. Otherwise the Government subjects the contractor to a substantial risk of an inequitable cut-off date and forfeiture without notice, which was not in the contemplation of the contractor when it signed the contract. The letters relied upon by the Government as containing the final and conclusive opinion of the Contracting Officer are insufficient.

II

It therefore becomes necessary to decide the issue upon the evidence as submitted to the Court upon the trial. This requires a construction of the contract and a determination of the cause of the defects in the landscaping which occurred within the guaranty period.

According to the opinion of the Government's expert witnesses, the barren areas could have been due to any one of three reasons, (1) faulty preparation of the seed bed, (2) improper maintenance, or (3) exterior forces such as the elements and trampling by patients and construction workers. Testimony was also adduced by the Government as to what could constitute faulty preparation of the seed bed. Among the items mentioned which might produce such fault were the depth and nature of the seed burial, e. g., improper coverage (dries out too quickly), too deep coverage (no light comes through), improper treatment of soil (not sufficient lime or fertilizer), too finely tilled or not sufficiently tilled soil or soil seeded when wet. The witness

on behaf of Hammer testified as to the steps Hammer took to prepare the soil and to seed the bed to fully comply with the contract. Hammer's witness further testified that, in his opinion, the barren areas were due to improper maintenance by the Government including lack of proper moisture, and also trampling on certain specified areas, referred to in each case. His testimony indicated that one area in particular, referred to as "B", Government's Exhibit No. 7, was not included in the contract and consequently the Government's claim of $450 to correct this area was improper. On this point the Government conceded that Hammer's contention was correct. However, the Government through its witnesses adduced testimony which excluded as a cause of the barren areas, (1) improper maintenance and (2) exterior forces such as the elements and trampling, leaving as a potential cause either faulty preparation of the seed bed or some other unexplained cause.

All this testimony must be considered in the light of the terms of the contract. While the guaranty in Article 5 is poorly drawn and perhaps was never originally intended for a project of this type, it nevertheless is a guaranty for a period of one year of the work done by Hammer. In view of this one-year period, the Court concludes that the guaranty, if it is to be given any meaning, means that the results intended and contemplated by the work done by the contractor was guaranteed to exist and remain in the same condition for a period of one year subject to the exceptions in the guaranty clause and provided that the Government complied with its obligation to maintain the specified areas during that period. Otherwise it would appear that the guaranty is meaningless.

Based upon all the testimony, the Court is of the opinion that the barren areas were not caused by the elements or any exterior forces or by any of the other exceptions specified in Article 5 of the contract, and that the Government complied with its obligation to maintain the lawn areas after the con-

tractor had completed its work. It, therefore, concludes that the defendant Hammer was liable under its guaranty to correct the deficiencies in the barren areas during the one-year period and having failed to do so, Hammer is obligated to reimburse the Government for the expenses sustained by it in this respect.

This opinion constitutes the Court's findings of fact and conclusions of law.

Settle order within ten (10) days on two (2) days' notice.