**UNITED STATES of America, Plaintiff-Appellee,**

v.

**HAMMER CONTRACTING CORPORATION and Aetna Insurance Company, Defendants-Appellants.**

No. 261, Docket 28534.

United States Court of Appeals Second Circuit.

Argued Jan. 31, 1964.

Decided April 20, 1964.

Morton Hollander, Atty. Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Joseph P. Hoey, U. S. Atty. for Eastern District of New York and John C. Eldridge, Attorney, Dept. of Justice, Washington, D. C., on the brief), for plaintiff-appellee.

Bennett Frankel, New York City (Cowan, Liebowitz & Latman, New York City, on the brief), for defendants-appellants.

Before LUMBARD, Chief Judge, and WATERMAN and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

This action, brought by the United States of America pursuant to 28 U.S. C.A. § 1345, sought $4,565.32 plus interest for a breach of contract pursuant to which defendant Hammer Contracting Corporation (Hammer) agreed to per-

form certain landscaping work at the Veterans Administration Hospital in Brockton, Massachusetts. Under the contract, entered into in September, 1954, Hammer agreed to do all the work of landscaping and laying of lawn areas around the hospital. It guaranteed all work under the contract for a period of one year after completion.

The work was completed on October 18, 1954, and Hammer was paid in full. By letter of April 8, 1955, the Veterans Administration's chief contracting officer notified Hammer that there were numerous areas of the lawn where the grass seed had not germinated and directed it to investigate and take the necessary corrective steps to bring the work in compliance with the contract. Hammer replied on April 18, 1955 that an investigation had been made, the overall condition of the lawn was good and that any additional seeding should be postponed until after August 15th. The contracting officer agreed to the postponement.

On August 17, 1955, the contracting officer wrote Hammer requesting advice as to when the corrective work under the guaranty was to commence. Hammer did not reply. On October 26, 1955 the contracting officer wrote Hammer, reviewing previous correspondence and informing it of the Government's intention to correct the deficiencies in the work covered by the guaranty. The letter also stated that no further notice would be sent and that "[a]s soon as the full costs of this corrective work is known, action will be taken to establish the liability of your firm and your surety with these costs." A copy of the letter was sent to Hammer's surety. Hammer replied that it had been unable to do the work because of other contracts it

was working on. Stating that it intended to "fulfill all our obligations," Hammer requested an extension of time until April 1, 1956. The extension of time was granted. On April 2, 1956 the contracting officer requested information as to when the corrective work was to start. Hammer replied that its representative had visited the hospital on April 6 where it appeared to him that the grass areas were beginning to grow and would be all right in one or more seasons. Hammer felt its work was satisfactory and no corrective attention was needed. To this the contracting officer replied on April 23, 1956:

"You are advised that this office does not concur in your opinion that the work under your contract has been satisfactorily fulfilled. * * *

"Demand therefore is again made that you immediately proceed to bring all the work under your contract into compliance with your contract requirements. No further notice will be furnished to you regarding this matter.

"In the event that this corrective work is not started on or before May 1, 1956 this office intends to authorize the Station to complete this work. The full cost of the work will then be charged to your account. Our present estimate indicates that a cost of approximately $5000.00 is involved."

A copy of this letter was also sent to Hammer's surety. The Government had the corrective work done and sent Hammer a bill for $4,545.32. Hammer failed to pay and this action was filed.

The Government claimed that, by virtue of the "Disputes" clause in the contract,[1] it was entitled to judgment be-

---

1. "6. DISPUTES

"Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within

30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the head of the department, and the decision of the head of the department or his duly authorized representatives for the hearings of such appeals shall, unless determined by a court of competent

cause of Hammer's failure to appeal the determination of the contracting officer in his letter of April 23, 1956. The district judge rejected this claim because in his opinion that letter did not notify Hammer in clear and unequivocal terms that a final determination under the "Disputes" clause was thereby made. However, Judge Bartels found upon the evidence that Hammer was responsible for correcting the condition of the areas on the lawn, and had failed to do so. He rendered judgment for the Government in the sum of $4,115.32 plus interest. Here, the Government urges us to affirm on the ground urged by it in the district court. While there is no question in our minds that the judgment should be affirmed, we do so on the ground that the Government was entitled to judgment because the appellants had failed to pursue the administrative appeal. The district court should not have reviewed the question of liability.

The contract here involved provided for the usual administrative procedures for resolving disputes arising under it. The procedure specified in the standard "Disputes" clause was reiterated in Article 5, the guaranty clause of the contract: "The opinion of the Contracting Officer as to the liability of this contractor under any such guaranty or as to the satisfactory fulfillment or compensation for the non-fulfillment thereof will be final, subject to written appeal by the contractor, within thirty (30) days, to the Administrator, whose decision will be final and conclusive upon the parties hereto, subject to Public Law 356, 83rd Congress, approved May 11, 1954, 68 Stat. 81." It is agreed that Hammer did not appeal to the Administrator or his representative.

Consistently since 1878 the Supreme Court has enforced provisions similar to

the "Disputes" clause in this contract. Kihlberg v. United States, 97 U.S. 398, 24 L.Ed. 1106 (1878); United States v. Moorman, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256 (1950). In Moorman the Court reasoned that "If parties competent to decide for themselves are to be deprived of the privilege of making such anticipatory provisions for settlement of disputes, this deprivation should come from the legislative branch of government." (338 U.S. at p. 462, 70 S.Ct. at p. 291, 94 L.Ed. 256.) See also: United States v. Callahan Walker Constr. Co., 317 U.S. 56, 63 S.Ct. 113, 87 L.Ed. 49 (1942). In United States v. Blair, 321 U.S. 730, 735, 64 S.Ct. 820, 823, 88 L.Ed. 1039 (1944) the Court stated: "Respondent has thus chosen not to follow 'the only avenue for relief,' United States v. Callahan Walker Constr. Co., 317 U.S. 56, 61, 63 S.Ct. 113, 115, 87 L.Ed. 49 [53], available for the settlement of disputes concerning questions arising under this contract." See also United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946); Annotation, 94 L.Ed. 261. It is not disputed that a final judgment of a contracting officer, or administrative appeal board, may serve as the basis of affirmative relief by the Government as well as a defense to a suit instituted by the contractor. Cf. United States v. Hamden Co-operative Creamery Co., 297 F.2d 130 (2 Cir. 1961); United States v. Smith, 152 F.Supp. 322 (E.D.Pa. 1957).

Judge Bartels held that the Government could not preclude him from reviewing the issue of liability because of the failure of the contractor to appeal to the administrator of the agency. He reasoned that the right of the Government to preclude a review of the issue of liability was "a drastic remedy and should be strictly construed and strictly complied

jurisdiction to have been fraudulent, arbitrary, capricious, or so grossly erroneous as necessarily to imply bad faith, be final and conclusive: Provided, That, if no such appeal to the head of the department is taken, the decision of the Contracting Officer shall be final and conclusive. In connection with any appeal proceeding

under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision."

with." Therefore, he held that the April 23, 1956 letter did not notify the contractor in clear and unequivocal terms that it "was the final and conclusive one, referred to in the contract." A review of all of the correspondence in this case makes it clear that Hammer must have understood the last letter from the contracting officer to be the final letter—the decision of the contracting officer to be considered a final determination of liability unless appealed within thirty days.

■ We are not impressed by the argument that Hammer need not have taken the administrative appeal provided for in the contract, after receiving the letter of April 23, 1956, by virtue of the fact that the letter of October 26, 1955 also stated that "no further notice will be sent" and yet further correspondence was had with the contracting officer. The Government's agreement to Hammer's proposal contained in its reply to the earlier letter cannot be regarded as a waiver of the benefit of the disputes clause in the event that Hammer failed to honor its offer. To do so would not only enable a contractor to escape the appeal procedure by the simple expedient of proposing a settlement and then not honoring it, but would also discourage the settlement of these disputes on the primary contracting officer level.[2] Nor do we find much weight in the argument that the letter should have included a specific reference to Article 6 of the contract. A contracting party ought to be chargeable with knowledge of the agreements into which it has entered.

Hammer urges us not to uphold the Government because of the Wunderlich Act, 41 U.S.C.A. §§ 321–322. While the Wunderlich Act was intended to overcome the effect of United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.

Ed. 113 (1951), which held all decisions by government officers rendered pursuant to the standard dispute clauses final absent a showing of fraud, it did not create any new rights for the contractor. H. Rep.No.1380, 83 Cong. 2 Sess. (1954); 1954 U.S.Code Cong. & Admin.News p. 2195. Hammer's reliance on the Wunderlich Act is clearly misplaced, because it did not exhaust the administrative remedies required in its contract. Hammer thus "chose not to follow the only avenue for relief."

We hold that judgment in favor of the United States should be affirmed on the ground that the contractor failed to appeal from the contracting officer's decision of the disputed issue of fact and that it was unnecessary to review the questions of liability.

Judgment affirmed.

2. On May 25, 1956, the Contracting Officer sent yet another letter to Hammer, notifying it that the station had been authorized to proceed with the work and that the cost of construction would be charged to Hammer's account. We do not think this letter in any way qualified or limited the effect of the April 16 letter. At the most, its sending was another warning to Hammer that its position was finally rejected. Had Hammer then made an effort to appeal, and had it been rejected as untimely, we might have a different problem. But of course it took no such action.