UNITED STATES of America,
Appellant,

v.

A. L. ULVEDAL, d/b/a Ulvedal Construction Company, and United Pacific Insurance Company, Appellees.

No. 18495.

United States Court of Appeals
Eighth Circuit.

Feb. 8, 1967.

Robert C. McDiarmid, Atty., Dept. of Justice, Washington, D. C., for appellant, John W. Douglas, Asst. Atty. Gen., Civil Division, Dept. of Justice and David L. Rose, Atty., Dept. of Justice, Washington, D. C., and John O. Garaas, U. S. Atty., Fargo, N. D., were on the brief with him.

Gordon Caldis, Grand Forks, N. D., for appellees.

Before VAN OOSTERHOUT, BLACKMUN, and MEHAFFY, Circuit Judges.

## BLACKMUN, Circuit Judge.

The United States instituted this action seeking net damages of $7,963.34 under a construction contract between the government, acting through the National Aeronautics and Space Administration, and the defendant Ulvedal, doing business as Ulvedal Construction Company. The second defendant is Ulvedal's performance bond surety. Jurisdiction is conferred by 28 U.S.C. § 1345.

After the defendants filed their answer, the United States moved for summary judgment. The district court denied that motion by order reciting that it was "unable to say on the present state of the record that there exists no genuine issue as to any material fact". The court, however, made the written statement required by 28 U.S.C. § 1292(b) and we permitted an appeal. We must reverse.

The facts are established by the pleadings and by the undenied material supportive of the motion. On July 22, 1960, the defendant Ulvedal entered into a contract with NASA for the construction of a radio tracking facility near East Grand Forks, Minnesota, at a cost of $167,280. The contract provided that the work was to start "Immediately"; that it was to be completed by September 13, 1960; that "The Contractor shall pay to the Government as compensation for delayed possession * * * the sum herein specified as ascertained and liquidated damages for each calendar day required for completion beyond" the date specified; and that "The deductions required * * * for failure to complete the work * * * in the time stated, will be at the rate of $100.00 per calendar day * * *"

The contract also contained a standard "changes" paragraph authorizing the contracting officer by written order to make changes in the drawings or specifications and, when appropriate, "an equitable adjustment"; a standard "changed conditions" paragraph directed to subsequently discovered physical conditions at the site and providing for "an equitable adjustment"; a provision authorizing the contracting officer to extend the time for completion of the work; a standard "disputes" paragraph;[1] and a provision

---

1. "6. DISPUTES

"(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the head of the agency involved. The decision of the head of the agency or his duly authorized representative for the determination of such appeals shall be final and conclusive. This

provision shall not be pleaded in any suit involving a question of fact arising under this contract as limiting judicial review or any such decision to cases where fraud by such official or his representative or board is alleged: *Provided, however,* that any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith or is not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in ac-

supplemental to the "changes" and "changed conditions" paragraphs specifying how adjustments in the contract price were to be computed.

The United States, through its contracting officer, did extend the time of the contract's completion from September 13 to October 31, 1960. The work, however, was not completed for final acceptance until February 20, 1961, 112 days after the preceding October 31. The stated contract price nevertheless was paid to the defendant Ulvedal.

On November 23, 1962, the contracting officer wrote Ulvedal. In this letter he reviewed submitted modification proposals and allowed five change orders which effected a net increase of $804.91 in the price. He mentioned another change order which he did not allow; the negotiations which had taken place; the 112 day delay; lack of justification for that delay and the absence of word from the defendant during the two months since the last negotiation meeting. The officer then stated that he must "issue a written decision in accordance with the provisions of" the contract's disputes clause. He proceeded to fix the liquidated damages for the delay at $11,200 and the amounts due from and to the government. This resulted in a net figure of $7,963.34 due from the contractor. He also outlined the available appeal procedure.[2]

Ulvedal took no administrative appeal and did not comply with the request for payment. The government made demand upon the surety in August 1965. Payment was not forthcoming. The present suit against Ulvedal and his surety was then instituted in February 1966.

In their answer the defendants, in addition to admissions, pleaded "substantial compliance with the requirements" of the contract by October 24, 1960; that all delays arose from causes for which the contract provided that the con-

---

cordance with the Contracting Officer's decision.

"(b) This Disputes clause does not preclude consideration of questions of law in connection with decisions provided for in paragraph (a) above. Nothing in this contract, however, shall be construed as making final the decision of any administrative official, representative, or board on a question of law."

2. "Since this matter has been pending for approximately two (2) years and appears to be no closer to a solution, it is incumbent on me, as Contracting Officer, to issue a written decision in accordance with the provisions of Clause 6 "Disputes", of the General Provisions.

"It is my decision that your estimate of $6,812.92 does not represent an equitable adjustment of the contract price for the additional work and is, therefore, not accepted. It is my further decision that the Government's estimate of $2,431.75 is fair and reasonable and is an equitable adjustment in price for the work involved.

"Since you have failed to provide any evidence to the contrary, and as contained in our letter of May 14, 1962, it is my decision your company was in default for 112 days for which liquidated damages at the rate of $100.00 per calendar day are assessed in accordance with Paragraph 29.B.

"It is requested you forward a check in the amount of $8,768.25, ($11,200.00 liquidated damages less $2,431.75 additional work) for the difference due the Government for these outstanding items. Your check should be made payable to the 'Treasurer of the United States' and forwarded directly to this office. Upon signature and return of attached Amendment No. 1, your check to the Government may be reduced in the amount of $804.91 to a new total of $7,963.34.

"This is the final decision of the Contracting Officer on the question involved in this dispute. Decisions on disputed questions of fact and on other questions that are subject to the procedure of the Disputes clause may be appealed in accordance with the provisions of the Disputes clause. If you decide to make such an appeal from this decision, written notice there[of] (in triplicate) must be mailed or otherwise furnished to the Contracting Officer within thirty days from the date you receive this decision. Such notice should indicate that an appeal is intended and should reference this decision and identify the contract by number. The NASA Board of Contract Appeals is the authorized representative of the Administrator for hearing and determining such disputes. The rules of the NASA Board of Contract Appeals are set forth in 41 C.F.R. 18–60 (24 F.R. 5183)."

tractor not be charged; that over $8,000 was due from the government to the contractor; that under the contract any liquidated damages were to have been satisfied by deductions; that the United States asserted no deduction when payment was effected; that the government was now estopped from claiming liquidated damages; and that the government was also guilty of laches. The defendant Ulvedal counterclaimed for the amount alleged to be due him.

The first section of the Wunderlich Act, 41 U.S.C. § 321, which became law in 1954, states that no contract provision relating to the finality of a decision of a government representative shall be pleaded as limiting judicial review where fraud is alleged, *"Provided, however, That any such decision shall be final and conclusive unless the same is fra[u]dulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence"*. The Act's second section, 41 U.S.C. § 322, states that no government contract shall contain a provision making the decision of any administrative official final on a question of law. The identity of the language of these sections with the present contract's disputes clause is apparent. The Wunderlich Act thus does not serve to impeach the contract here in any way. Instead, the words of finality and conclusiveness in § 321 are in complete accord with the contract.

 We know of no rule of law preventing the government and a contractor, such as Ulvedal, from entering into an agreement which, by its terms, makes final a contracting officer's decision in a dispute involving a question of fact arising under their contract. The Supreme Court has consistently upheld this very kind of provision. United States v. Moorman, 338 U.S. 457, 460–462, 70 S.Ct. 288, 94 L.Ed. 256 (1950); United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951); United States v. Utah Constr. & Mining Co., 384 U.S. 394, 418–419, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). The purpose of a disputes clause

"is to provide for a quick efficient determination of disputes on an administrative level * * *" United States v. Taylor, 333 F.2d 633, 637 (5 Cir. 1964).

We would readily conclude, therefore, that the defenses asserted in the answer were matters which had already been presented to the contracting officer; that that officer had made a decision with respect thereto; that the contractor had received the prescribed notice thereof and had been advised as to appellate procedure; that the decision, by the clear terms of both the Wunderlich Act and the disputes clause, became final and conclusive upon the parties; that the defendant contractor abandoned his opportunity to make his record before the agency head and there to establish, if he could, that the decision was one which qualified for judicial review; and that, consequently, the defendants are now foreclosed from so doing in this litigation. United States v. Joseph A. Holpuch Co., 328 U.S. 234, 239–240, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946); United States v. Blair, 321 U.S. 730, 735, 64 S.Ct. 820, 88 L.Ed. 1039 (1944); United States v. Peter Kiewit Sons' Co., 345 F.2d 879, 883–884 (8 Cir. 1965); Happel v. United States, 279 F.2d 88, 91–92 (8 Cir. 1960).

The defendants, however, would avoid the effect of these cited and apparently controlling authorities by suggesting that they concern only situations of affirmative relief and do not deprive a contractor of his "right to offer defense in an enforcement suit" by the government.

 We fail to perceive any validity in the distinction. The rationale of the cases cited seems equally applicable when the contractor is sued as when he is the one who sues.

The Second Circuit has expressly so held. United States v. Hammer Contracting Corp., 331 F.2d 173 (2 Cir. 1964), affirming 216 F.Supp. 948 (E.D.N.Y. 1963), where the district court had said, p. 950, "Such a final decision may be asserted by the United States affirmatively as well as defensively". See United States v. Smith, 152 F.Supp. 322 (E.D.

Pa.1957). We agree with the holding and implications of the *Hammer* case.

The only authorities cited by the defense in support of its position are three opinions under the rent control statutes. The courts there drew a distinction between affirmative relief and a defense in an enforcement proceeding. United States v. Fritz Properties, Inc., 89 F. Supp. 772, 777–780 (N.D.Cal.1950); Woods v. Laabs, 92 F.Supp. 220 (W.D. Mich.1950); Smith v. United States, 199 F.2d 377 (1 Cir. 1952). Another rent case is United States v. McCrillis, 200 F.2d 884, 885–886 (1 Cir. 1952). See Bull v. United States, 295 U.S. 247, 261–263, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). We conclude, however, that these rent cases have no pertinence in the present context. They were proceedings equitable in nature and involving charged violations of administrative regulations or orders. They did not concern specific contract provisions, freely entered into by the parties, and claims for damages thereunder.

■ Neither are we impressed with the defendant contractor's assertion that he has never had a hearing or his day in court. The hearing procedure contemplated by the parties' contract was available to him but, for reasons of his own, was not used. The absence of a hearing was thus a consequence of his own choice not to pursue the procedure which his contract specified. This does not, as he would claim, amount to a deprival of Fifth Amendment due process.

■ The defense of laches on the part of the government is of no help to the contractor. The United States is not subject to that defense. United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); United States v. 93 Court Corp., 350 F.2d 386, 388 (2 Cir. 1965), cert. denied 382 U.S. 984, 86 S.Ct. 560, 15 L.Ed.2d 473; Haymarket Veterans Uniform Co. v. United States, 338 F.2d 698 (1 Cir. 1964).

■ The defendants' estoppel argument also fails. Although the contract refers to "deductions required * * * for failure to complete the work", it says, too, that the contractor "shall pay" the government the liquidated damages. It thus contemplates payment as well as deduction. Accordingly, we could not hold that deduction is the exclusive treatment. Further, even if grounds normally sufficient for estoppel in a suit between private parties were present here (which they are not), the United States is not subject to estoppel because of an act of its agent. Shepard Eng'r Co. v. United States, 289 F.2d 681, 682 (8 Cir. 1961). See Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947), and Swanson v. United States, 171 F.2d 718, 721 (8 Cir. 1949). And, of course, the government may recover funds erroneously paid. United States v. Wurts, 303 U.S. 414, 415, 58 S.Ct. 637, 82 L.Ed. 932 (1938); Stone v. United States, 286 F.2d 56, 58–59 (8 Cir. 1961).

■ The defendants' final suggestion that, in any event, they are entitled under the contract to a reduction of liquidated damages in proportion to the total value of the work and the value of that portion not accepted falls along with the contract point hereinabove discussed. Such would be a dispute concerning a question of fact arising under the contract and would be for the decision of the contracting officer.

Reversed with directions to grant the motion of the United States for summary judgment in the amount prayed for in the complaint and for dismissal of the counterclaim.