Mr. Justice Roberts
delivered the opinion of the court as follows:
This case involves the meaning and application of the terms of a standard form of Government construction contract.
*617 The findings of the Court of Claims may be summarized. In 1931 the War Department asked bids for the construction of a levee on the east side of the Mississippi River. The respondent bid 14.43$ a cubic yard on a section of the work ■involving approximately 3,881,600 cubic yards of earthwork. A paragraph of the specifications reserved the right to make such changes in the work contemplated as might be necessary or expedient to carry out the intent of the contract or to meet unanticipated conditions, but added that no such modification would be the basis for a claim for extra compensation except as provided in the regular form of contract to be entered into between the parties.
The respondent began construction at the south end of the project and proceeded northward The length of the proposed levee was divided by stations one hundred feet apart and numbered from north to south. Sixty-eight per cent, of the construction between Station 5123 and Station 5113 had been completed when portions of the levee already constructed south of Station 5123 were found to have a tendency to subside. For this reason the Government contracting officer, on October 7, 1932, ordered the work stopped between the two stations while he sought to determine the cause of the subsidence. He concluded that the placing of an enlarged false berm, not called for in the original specifications, would pi-event subsidence in the sector between the two stations. On October 18 th he gave respondent a written order to construct such a berm; the order stated that respondent would be given one hundred per cent, credit for the earth placed south of Station 5123 where the subsidence had occurred and that payment for additional yardage required by the false berm would be made at the contract price per cubic yard. The additional yardage involved was about 64,000 cubic yards. The work covered by the change order was necessary for the completion of the project. The order was issued against the respondent’s protest that an extra price should be allowed as the additional work would cost the respondent more than 14.43$ per cubic yard, and that the order was not within the terms of the contract. The respondent asserted it would later present a claim for extra cost occasioned it by the additional work.
Article 3 of the standard form of construction contract signed by the parties provides:
“Article 3. Glumges. — The contracting officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings and (or) specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the amount due *618 under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. . . . Any claim for adjustment under this article must be asserted within ten days from the date the change is ordered, unless the contracting officer shall for proper cause extend such time, and if the parties can not agree upon the adjustment the dispute shall be determined as provided in Article 15 hereof. But nothing provided in this article shall excuse the contractor from proceeding with the prosecution of the work so changed.”
Article 15 provides:
“Article 15. Disputes. — Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal-by the. contractor within thirty days to the head of the department concerned, whose decision shall be final and conclusive upon the parties thereto as to such questions of fact. In the meantime the contractor shall diligently proceed with the work as directed.”
The respondent did not appeal from the order of the contracting officer to the head of the department concerned. After completion of the work, the acceptance of the Government’s final payment was under protest. Thereafter respondent brought this action for its additional costs over the price of 14.430 paid it for the extra work and was awarded a recovery by the court below.
The Government’s defense was that, under the terms of the contract, the contracting officer’s decision as to what was an equitable adjustment involved only a qúestion of fact and that if the respondent was dissatisfied with the officer’s judgment the contract limited further recourse to an appeal to the department head. The court below overruled the contention by a vote of 3 to 2, one of the judges in the majority writing a separate opinion. (95 C. Cis. 314.) Two of the judges were of opinion that the contracting officer paid no attention to Art. 3 of the contract, made no adjustment, and, without considering the possibility of extra costs involved in the extra work, simply ruled that the contract price applied to it.
We cannot accept this view for several reasons. In the first place, there are no findings to support it. The findings show that the officer gave the matter consideration, reached a decision about it, and issued the order which gave respondent a credit to which it might not have been entitled under the contract, and fixed the rate of 14.430 per cubic *619 yard for the extra yardage required by the change in the specifications. There-are no findings that the contracting officer failed to ascertain the probable cost of the new work or that he did not honestly decide that the contract price would be a fair allowance for the extra work. If the conflict between the opinion and the findings were sufficient to require a remand for clarification this is obviated in the present instance by certification of the evidence which supports the following conclusions. Between October 7th, the date of the stop order, and October 18th, the date of the change order, the respondent’s officials were in touch with the area, engineer and the contracting officer, represented that there was not sufficient earth in the borrow pit opposite the sector in question but that the earth would have to be brought from other points, and that the contract price of 14.430 would be insufficient to compensate for the additional expense involved. The Government’s • representatives disagreed with the contentions. Prior to October 18th, however, after talking with the contracting officer, respondent’s officials signified that they would proceed with the work as ordered, keep a careful record of the work done and its cost, and would later insist on payment of any cost greater than that specified by the change order.
All three judges who were in the majority below agreed, as an alternative ground of decision, that if what the contracting officer did constituted his notion of an equitable adjustment, he was wrong; and the respondent was right in its claim that the adjustment made was unfair and inequitable. To the Government’s insistence that the question was one of fact and, therefore, to be settled finally by appeal to the department head, in accordance with Art. 15 of the contract, the court below replied that this court, in Case v. Los Angeles Lumber Co., 308 U. S. 106, and Securities Commission v. United States Realty Co., 310 U. S. 434, held that what constitutes an-.equitable-, adjustment is not a question of fact but a question of law. In this view they held that Art. 15 was inapplicable; that the contracting officer having-erred in his construction of the contract had thereby breached its terms, and the respondents were entitled to sue for the amount of damage incurred by that breach.
The decisions cited are not authority for the principle that what is fair and equitable is always a question of law. Quite the contrary. In § 77B of the Bankruptcy Act it was provided that the court should confirm a plan of reorganization if satisfied “it is fair and equitable” and does not discriminate unfairly in favor of any class of creditors or stockholders. We held that, in this connection, the phrase “fair and equitable” had become a term of art, that *620 Congress used it in the sense in which it had been used by the courts in reorganization cases, and that whether a plan met the test of fairness and equity long established by judicial decision was not a question to be answered by the creditors and stockholders but by the court as a matter of law.
An “equitable adjustment” of the respondent’s additional payment for extra work involved merely the ascertainment of the cost of digging, moving, and placing earth, and the addition to that cost of a reasonable and customary allowance for profit. These were inquiries of fact. If the contracting officer erroneously answered them, Article 15 of the contract provided the only avenue for relief.
The judgment is reversed.