**CENTRAL NEBRASKA PUBLIC POWER AND IRRIGATION DIST. v. TOBIN QUARRIES, Inc.**

**No. 13360.**

Circuit Court of Appeals, Eighth Circuit.

Oct. 11, 1946.

 

P. E. Boslaugh, of Hastings, Neb. (R. O. Canaday, of Hastings, Neb., on the brief), for appellant.

John M. Martin, of St. Louis, Mo., and W. C. Fraser, of Omaha, Neb. (Frank L. Martin, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is a suit brought by the appellee as plaintiff for a declaratory judgment. The case involves the interpretation and application of a construction contract. The appellant, The Central Nebraska Public Power and Irrigation District, is a public corporation created by an act of the Nebraska legislature with its principal place of business at Hastings in that state. The appellee, Tobin Quarries, Inc., is a corporation organized under the laws of Missouri and qualified to transact business in Nebraska as a foreign corporation. The parties will be referred to herein as plaintiff and defendant.

The contract to be construed and applied is a Nebraska contract. Its interpretation and the disputes growing out of its performance are, therefore, governed by Nebraska law. Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 88 L.Ed. 1188, 114 A.L.R. 1487. In such a case upon all doubtful questions of local law this court will be disposed to accept the view of the trial court. Michigan Fire & Marine Ins. Co. v. National Surety Corporation, 8 Cir., 156 F.2d 329, 333, and cases cited.

On September 22, 1944, the defendant, owner of the Kingsley Dam situated in western Nebraska, entered into a contract with the plaintiff, by the terms of which the plaintiff agreed to furnish the tools, labor and material necessary to complete the construction of the riprap on the upstream slope of the dam according to plans and specifications identified as part of the contract.

The controversy is concerned with the gradation of gravel furnished and tendered by the plaintiff for use in the construction

of a filter layer 15 inches thick over the upstream surface slope of the dam. Section 2.4 of the specifications relating to the gravel to be used in the construction of this filter layer reads:

"Gravel shall be clean, hard, durable pieces graded from ¼ inch to 2½ inches, of a quality equal to that generally specified for first class, Portland Cement Concrete. Not more than five per cent shall pass through a No. 4 screen."

After the plaintiff had entered upon the construction of the filter layer and had furnished gravel and proposed to continue to furnish gravel therefor, which it contends complied with the provisions of section 2.4 of the specifications, the engineer for the defendant on different days during the month of March, 1945, took 16 samples of the gravel after it had been graded for use at the plaintiff's processing plant, each sample consisting of approximately 1000 pounds, and separated the samples into several sizes. These tests showed that the following average percentages quantitively were retained on the following sized screens:

On a 2½ inch screen, 3%; on a 2 inch screen, 5.2%; on a 1½ inch screen, 10.2%; on a 1 inch screen, 23.6%; on a ¾ inch screen, 34.9%; on a ½ inch screen, 55.8%; on a No. 4 screen, 96.7%. Thus it appears that 3.3% of the gravel tested passed through a No. 4 screen.

Thereafter the defendant refused to permit the plaintiff to continue to furnish and to place in the structure the gravel tendered and gave notice in writing that the only gravel which would be accepted and approved by defendant's engineer must comply with the following percentages retained on the following sized screens:

On a 2½ inch screen, 0% to 5%; on a 2 inch screen, 5% to 40%; on a 1½ inch screen, 20% to 60%; on a 1 inch screen, 35% to 72%; on a ¾ inch screen, 44% to 80%; on a ½ inch screen, 54% to 86%; and on a No. 4 screen, 95% to 100%.

Compliance with defendant's demand would have substantially increased plaintiff's costs with the result that this suit was commenced to secure a judicial determination of the rights of the parties under the contract.

The plaintiff contended in the district court (a) that the gravel which it furnished and tendered meets its contract obligations; (b) that there exists no legal obligation on it to furnish gravel conforming to the gradation percentages required by defendant's engineer; and (c) that it is the duty of the defendant, if it insists on changing the gravel specifications, to issue a proper change order, fixing a new basis of compensation and time for completing the structure as provided in section 1.31 of the specifications. And a decree declaring accordingly was requested.

The defendant denied the plaintiff's contentions and asked the court to decree that the grading of the gravel involves a question of fact and that the dispute with reference thereto must be referred to the engineer for settlement and that his decision thereon shall be final.

The court found generally for the plaintiff and entered a decree declaring:

"That under the proper construction of the contract and its specifications, plaintiff is required only to furnish gravel of a quality equal to that generally specified for first class Portland Cement concrete, which shall be clean, hard, durable pieces, graded in sizes not smaller than ¼ inch and not larger than 2½ inches, (but without any obligation to provide specific quantities of the several intermediate sizes between said maximum and minimum prescriptions) of which gravel not more than 5 per cent shall pass through a No. 4 screen; that under the contract the engineer of the defendant has no authority to require the plaintiff to furnish, without adjustment of payment therefor, gravel conforming to specific intermediate gradations, by him prescribed after the execution of the contract, and that if the defendant persists in requiring specific gradations of gravel pursuant to such prescriptions of the engineer, the defendant is under the duty and obligation forthwith to issue to the plaintiff a change order signed and approved as provided for in Section 1.31 of the specifications, and to adjust the basis of plaintiff's compensation and the time

for the construction of the filter layer in accordance with the change in specifications so resulting."

The opinion of the court, carefully analyzing the contentions of the parties, the facts, and the law, is reported in Tobin Quarries v. Central Nebraska P. P. & I. Dist., D. C., 64 F.Supp. 200.

The defendant argues that the court erred generally and in every particular in its decree. Affirmatively the defendant contends:

1. That the provision of the specifications that "Gravel shall be * * * pieces graded from ¼ inch to 2½ inches," considered in connection with the entire contract including the specifications, means (a) that the gravel "must be graded so as to construct a filter layer"; (b) that the provision of the contract that the work must be done subject to the supervision and approval of the engineer "confers upon the Engineer the power and authority to determine whether or not gravel tendered by the contractor is graded and meets the specifications"; and

2. That the dispute with reference to the interpretation and application of the words "graded from ¼ inch to 2½ inches" is a question of fact, and that the decision of that question by the engineer is final and binding on the parties under Article IV of the contract.

It is apparent that the single ultimate problem to be determined by the court in this controversy is the proper construction of section 2.4 of the specifications referring to the sizes of gravel used in construcing the filter layer of the dam. The gravel furnished and tendered by the plaintiff was satisfactory to the defendant in respect of all other required qualities. It had been processed by the plaintiff at the pit and all pieces less than ¼ inch and greater than 2½ inches in thickness had been screened out. Thus the problem is reduced to determining the meaning of the word "graded" as applied to the sizes of gravel between ¼ inch and 2½ inches in thickness, the defendant contending in brief that the word calls for specific quantities of the intermediate sizes, and that the amounts of the several sizes are to be prescribed by the engineer.

Webster's New International Dictionary defines the transitive verb "grade" to mean "To arrange in order, steps, degrees, or classes, according to size, quality, rank," etc. The trial court, after examining definitions in engineering texts and in legal authorities, concluded that, as used in the context here, the word "graded" signifies, "arranged in order according to size." 38 C.J.S., Grade, p. 972. And the court held that, as shown by the tests made by defendant, the gravel furnished and tendered by the plaintiff conformed to this definition. No one can successfully deny, we think, that the construction of the word by the court is both plausible and reasonable. Without some qualification it can mean nothing more nor less. The defendant, nevertheless, argues that the word means more than the accidental variation of sizes of gravel found in the natural state in the pit; that it means that the sizes must be so arranged that they will form a filter layer. The trial court pointed out in substance that such a qualification requires an amendment to the specification by reading into it, following the word "graded," the phrase, "in such intermediate sizes as the engineer shall prescribe." In other words, the amendment which the defendant would read into the specification does not belong to the definition of the word "graded"; it is an enlargement of the obligation of the plaintiff under the contract.

The only support in the record for the theory that the gravel must be graded so as to construct a filter layer is that the specification under consideration is found in a contract, one of the objects of which is the construction of a filter layer. But the contractor is not the guarantor of the sufficiency of the specifications to accomplish that purpose. Its only duty was to construct the filter layer, "as required in the Plans and Specifications." Where the contractor "does the work specified in the manner specified, his engagement is fulfilled and he remains liable only for defects resulting from improper workmanship or other fault on his part." State v. Com-

mercial Casualty Ins. Co., 125 Neb. 43, 248 N.W. 807, 811, 88 A.L.R. 790. The meaning of the specifications involved can not be determined by the efficiency or inefficiency of the completed filter layer.

The defendant next contends that power and authority to determine whether or not gravel tendered by the contractor is graded within the meaning of the specifications are conferred upon the engineer by Articles II and IV of the contract. The language of Article II relied upon reads, " * * * the material shall be furnished, said work performed and completed as required in the Plans and Specifications under the direction and supervision of and subject to the approval of the Owner or its representatives."

No citation of authorities is needed to show that such provisions in a construction contract confer no arbitrary power upon a supervising engineer. Such provisions do not authorize an engineer to reject construction work which complies with the contract and with the plans and specifications made part of the contract when it was executed. Neither do such provisions authorize an engineer to alter, amend or change the specifications during the progress of the work, except in the manner provided in the contract. Howard County v. Pesha, 103 Neb. 296, 172 N.W. 55. Section 1.31 of the specifications, as the trial court observed, affords a means whereby the defendant can change and amend the specifications.

Article IV of the contract provides that "All questions of fact" shall be submitted to the engineer and his decision shall be final and binding on the parties. The defendant insists that the problem presented here is one of fact to be resolved by the engineer under the authority of Article IV. This same contention was made in the district court, and the court found against the defendant on it. The court, citing Nebraska authorities, applied the rule that "Where the terms of the contract are admitted and are not in conflict and are unaided by parole evidence, their interpretation presents not a question of fact, but one of law." If the question here related to the gradations of a

specific quantity of gravel furnished by the plaintiff, a question of fact would be presented. That is not the question, however. The question presented by the issue relates to the meaning of the word "graded" as used in the contract. The tests made by defendant's engineer of 16 samples of the gravel tendered showed that the gravel was graded within the meaning of the contract according to the contentions of the plaintiff. The dispute is not about the gradations of the gravel furnished. The dispute is about the gradations required by the contract, that is, by section 2.4 of the specifications. See United States v. Callahan Walker Construction Co., 317 U.S. 56, 61, 63 S.Ct. 113, 87 L.Ed. 49. Such a controversy presents a question of law, not one of fact.

We find no error in the decision of the trial court. The judgment and decree appealed from is accordingly affirmed.