**William S. HAPPEL, doing business as Happel Contracting Company, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 16412.

United States Court of Appeals Eighth Circuit.

June 14, 1960.

Richard F. Moll, St. Louis, Mo., for appellant.

William H. Webster, U. S. Atty., East Dist. of Missouri, St. Louis, W. Francis Murrell, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before GARDNER, WOODROUGH, and VOGEL, Circuit Judges.

GARDNER, Circuit Judge.

Appellant, a contractor engaged in excavating and grading, brought this action to recover on a contract with the United States for doing certain excavating and filling along the Mississippi River in Perry County, Missouri, described in the record as the construction of a riverside berm revetment and repair to borrow pits. It was the contention of appellant that he was entitled to recover $8,835.37 for borrow pit fill, in addition to the amount paid him by the Government. We shall hereinafter refer to appellant as plaintiff and to appellee as the Government or defendant.

Defendant did not file answer but instead filed a motion for summary judgment based upon various documents and exhibits, including the complaint, the contract, and a certified copy of the transcript of the proceedings before the contracting officer and the Board of Contract Appeals.

The contract between the parties was a standard form Government construction contract, and, among others, contained the following provisions:

"6. Disputes. Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the head of the department, and the decision of the head of the department or his duly authorized representatives for the hearings of such appeals shall, unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary, capricious, or so grossly erroneous as necessarily to imply bad faith, be final and conclusive: Provided, That, if no such appeal to the head of the department is taken, the decision of the Contracting Officer shall be final and conclusive."

The contract also contained provision that:

"In the event of a dispute as to the amount of any adjustment under this paragraph, the matter shall be treated as a question of fact to be determined in accordance with the 'Disputes' clause of this contract."

Following the completion of his work plaintiff requested that a decision of the contracting officer be issued pursuant to Article 6, supra, as to work performed by plaintiff under the contract. In support of his claim for additional compensation plaintiff made a survey of the newly excavated borrow pit and submitted his mathematical calculations based thereon. The contracting officer, in passing upon plaintiff's claim for additional compensation, held:

"b. The area where the Contractor performed his measurement was at an area different from that prescribed in the contract for measurement, namely the borrow pits instead of the scoured areas. Since the Contractor's measurement was in a wholly different area from that provided for measurement under TP 2–08(a) (1) of the contract, it has no effect on the payment under the contract.

"c. Apparently the Contractor has a misinterpretation of the term 'actual quantity' as used in SC–03 of the contract. The term 'actual quantity' as used means the quantity determined by the Government's survey of each scoured area,

before the fill has been placed therein, on the basis of the net yardage between the ground surface determined by such survey and the lines and elevations shown on the contract drawings or such modification thereof as directed by the Contracting Officer. Yardage was computed by the average end area method from planimetered cross-sections in accordance with TP 2–08(a) (1) of the contract and was determined to be 186,386 cubic yards as set forth in paragraphs 5 and 6 of the inclosed findings of fact. The amount considered by the Contracting Officer as the 'actual quantity' is 186,-386 cubic yards, and since this does not vary from the 'estimated quantity' of 172,000 cubic yards by more than 20 percent, SC–03 of the contract has no application in this case.

"d. The key to the situation lies in TP 2–08(a) (1) and (2) and TP 2–08(b) (1). In TP 2–08(a) (1) there is provided the means of measurement of borrow pit fill for payment. There is no other provision in the contract for such measurement. The estimated quantity of 172,000 cubic yards was not to be relied on by the Contractor as the actual amount of fill to be moved; however, when he received the Government's measurements, he knew or should have known, that the scoured areas would not and could not be remeasured after the fill was placed. At that time, he had the 'actual quantity' for which he would be paid. TP 2–08(a) (2) gave the Contractor the right, under circumstances stated therein, to request the Government to resurvey prior to placing fill, which right he did not exercise. TP 2–08(b) (1) specifically provides that excavation from borrow areas or ditches or any other excavation used for borrow pit fill, regardless of the source, will not be measured for payment. It was not until 13 March 1957, long after the contract was completed, that the Contractor questioned the amount of compensation for borrow pit fill.

"Considering the foregoing, there is no basis for allowing the Contractor's requests. Further, the Contracting Officer has no power to reform the contract, which is what the Contractor seems to be seeking.

"You are hereby advised that the foregoing constitutes the final decision of the Contracting Officer pursuant to Article 6, Disputes, of the contract. Your attention is invited to your right to appeal from this decision within 30 days from the date of your receipt of this letter."

As indicated by the decision of the contracting officer, the contract contained provision to the effect that:

"Should the actual quantity of work performed under any of these items vary from the estimated quantity by more than 20%, a contract modification will be issued adjusting the estimated quantity and the estimated contract price, and an adjustment in the unit price for that item may be made * * *."

and since the amount as determined by the Government survey did not vary from the estimated quantity by more than 20% there was no basis for contract modification.

From this decision plaintiff had a right of appeal to the Board of Contract Appeals within 30 days of notice. Copy of the contracting officer's decision was served on plaintiff by registered mail pursuant to the terms of the contract. No appeal was perfected within the time limited, but thereafter he attempted such an appeal, which the Board of Contract Appeals dismissed as not being timely.

The trial court, in sustaining defendant's motion for a summary judgment, held that the amount of work performed by plaintiff and the quantity of borrow pit fill was a question of fact and hence, under the terms of the contract, where no appeal has been perfected from the decision of the contracting officer, "the decision of the Contracting Officer shall

be final and conclusive." The court also held that plaintiff had not, prior to the institution of the instant action, exhausted his administrative remedy inasmuch as he had not legally perfected an appeal to the Board of Contract Appeals.

In seeking reversal of the judgment appealed from plaintiff contends that the court erred in holding that the final decision of the contracting officer was a determination of a question of fact and hence precluded plaintiff's right of recovery.

Plaintiff was seeking to recover for performing services in filling a borrow pit. The measure of compensation was necessarily fixed by the contract but the amount was an ultimate question of fact and the mere fact that reference was made to the method of determining this question of fact did not convert the finding from a question of fact to a question of law. In United States v. Callahan Walker Construction Co., 317 U.S. 56, 63 S.Ct. 113, 115, 87 L.Ed. 49, the Supreme Court considered a standard form Government construction contract, the 15th article of which contained substantially the same provision with reference to the finality of the decision of the contracting officer on a question of fact. In sustaining the decision of the contracting officer the court among other things said:

"An 'equitable adjustment' of the respondent's additional payment for extra work involved merely the ascertainment of the cost of digging, moving, and placing earth, and the addition to that cost of a reasonable and customary allowance for profit. These were inquiries of fact. If the contracting officer erroneously answered them, Article 15 of the contract provided the only avenue for relief."

In disposing of this contention on the part of the plaintiff, the trial court said, inter alia:

"The amount of work performed by the plaintiff and the quantity of borrow pit fill was a question of fact * * * and the Contracting officer in his decision set out the amount. It has been repeatedly held that contract provisions similar to the one in the contract in question and referred to for the settlement of disputes concerning facts, is a valid provision for deciding these factual issues, and it is solely through its operation that claims may be made and adjudicated as to matters arising under the contract."

Even if it could be said that the contracting officer, in determining the ultimate fact, construed certain provisions of the contract, we are not persuaded that his construction was erroneous, and if the contracting officer was correct in his understanding of the provisions of the contract plaintiff could not be said to be prejudiced.

Quite aside from this question it seems to us that plaintiff had not, prior to instituting the instant action, exhausted his administrative remedies. He had not perfected an appeal from the decision of the contracting officer to the Board of Contract Appeals as provided in the standard form Government construction contract. The rule is well established that the procedure provided for by a clause of a Government contract requiring all disputes to be decided by the contracting officer, subject to appeal to the head of the department concerned, or his duly authorized representative, is exclusive in nature and is the sole method for making and adjudicating claims under the contract and, in the absence of some clear evidence that this procedure is inadequate or unavailable, it must be pursued and exhausted before a contractor can be heard to complain in a court. United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192; United States v. Blair, etc., 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039; United States v. Callahan Walker Construction Co., supra. In United States v. Joseph A. Holpuch Co., supra, the Supreme Court considered this precise question which arose in an action based upon a very similar contract to that in-

volved in the instant case. In the course of the opinion it is said:

"The narrow question here is whether a contractor's failure to exhaust the administrative appeal provisions of a Government construction contract bars him from bringing suit in the Court of Claims to recover damages.

\*   \*   \*   \*   \*   \*

"But Article 15 is something more than a dead letter to be revived only at the convenience or discretion of the contractor. It is a clear, unambiguous provision applicable at all times and binding on all parties to the contract. No court is justified in disregarding its letter or spirit. Article 15 is controlling as to all disputes 'concerning questions arising under this contract' unless oththerwise specified in the contract. It creates a mechanism whereby adjustments may be made and errors corrected on an administrative level, thereby permitting the Government to mitigate or avoid large damage claims that might otherwise be created. United States v. Blair, 321 U.S. 730, 735 [64 S.Ct. 820, 823, 88 L.Ed. 1039]. This mechanism, moreover, is exclusive in nature. Solely through its operation may claims be made and adjudicated as to matters arising under the contract. United States v. Blair, supra [321 U.S.] 735 [64 S.Ct. 823], 88 L.Ed. 1039; United States v. Callahan Walker [Construction] Co., 317 U.S. 56, 61 [63 S.Ct. 113, 115, 87 L.Ed. 49]. And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court.

"It follows that when a contractor chooses without due cause to ignore the provisions of Article 15 he destroys his right to sue for damages in the Court of Claims. That court is then obliged to outlaw his claims, whatever may be their equi-

ty. To do otherwise is to rewrite the contract." [328 U.S. 234, 66 S. Ct. 1001.]

Notwithstanding this conclusion, we have given consideration to all other contentions urged by plaintiff and think them without merit. The judgment appealed from is therefore affirmed.