**UNITED STATES of America,
Appellant,**

v.

**PETER KIEWIT SONS' CO., Appellee.**

**No. 17869.**

United States Court of Appeals
Eighth Circuit.

June 1, 1965.

Robert J. Vollen, Atty., Dept. of Justice, Washington, D. C., made argument for appellant and filed brief with John W. Douglas, Asst. Atty. Gen., Morton Hollander and David L. Rose, Attys., Dept. of Justice, and Theodore L. Richling, U. S. Atty., Washington, D. C.

James A. Buckley, of Fraser, Stryker, Marshall & Beach, Omaha, Neb., made argument for appellee and filed brief with Hird Stryker, Jr., of Fraser, Stryker, Marshall & Beach, Omaha, Neb.

Before VOGEL, MATTHES and MEHAFFY, Circuit Judges.

VOGEL, Circuit Judge.

The United States of America, appellant, and Peter Kiewit Sons' Company, appellee, entered into a contract whereby Kiewit leased to the United States various pieces of equipment, together with operating personnel. Among the equipment so leased was a Euclid end-dump truck No. 271 driven by an employee of Kiewit who had been furnished with the equipment to the United States. On October 14, 1959, while the dump truck was being used by the Corps of Engineers at the Hebgen Dam earthquake area in Montana, an accident occurred whereby the dump truck toppled into the Madison River, causing it to be damaged to the extent of $5,374.58, being the amount Kiewit allegedly expended to repair the truck and place it in a condition comparable to that in which it had been immediately prior to the accident.

The contract between the parties contained the following provision:

"*Article 5. Contractor's responsibility.* The contractor shall, be responsible that his employees strictly comply with all Federal, State, and municipal laws that may apply to operations under the contract; and it is understood and agreed that the contractor assumes full responsibility for the safety of his employees, plant, and materials and for any damage or injury done by or to them from any source or cause, *except damage caused to plant or equipment by acts of the Government, its officers, agents or employees, in which event such damages will be the responsibility of the Government in accordance with applicable Federal laws*." (Emphasis supplied.)

As well as the standard "disputes clause" found in most government contracts:

"*Article 8. Disputes.*

"(a) Except as otherwise provided in this contract, *any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer,* who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Secretary. The decision of the Secretary or his duly authorized representative for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.

"(b) This 'Disputes' clause does not preclude consideration of law questions in connection with decisions provided for in paragraph (a) above: *Provided,* That nothing in this contract shall be construed as making final the decision of any administrative official, representative, or board on a question of law." (Emphasis supplied.)

On December 28, 1959, Kiewit served notice on the Contracting Officer of the accident to the Euclid truck, identifying it as "plant item 19–271" and of its intent to make a claim for damages to the truck. The claim was based on the theory that a government employee, a "dump-man" who had been directing the truck dumping, was guilty of negligence and that the driver was free from fault for the accident. On December 19, 1960,

the damages to the truck having been ascertained, Kiewit again wrote, making specific claim for the cost of repairing the truck and asserting liability of the government not only on the basis of negligence on the part of a government employee, the dump-man, but this time asserting that the driver also was a government employee under the "loaned servant" doctrine, although carried on Kiewit's payroll, thus attempting to hold the government responsible for any acts of the driver.

On March 20, 1961, the Contracting Officer rendered a decision denying Kiewit's claim. He specifically found that the driver of the truck was hired and paid by Kiewit and was "under the general supervision of your [Kiewit's] superintendent and not under the direct control of the Government" and found that he was not an employee of the government but an employee of Kiewit's. The Contracting Officer further found that the accident was caused by the negligence of the driver and not by a government employee and concluded, therefore, that the damage was not caused by an act of the government or its agents or employees and that while the contract was in the nature of a bailment for hire, the government as bailee was not liable for damages resulting from the negligence or contributory negligence of the bailor, his servants or agents.

The Contracting Officer's letter of March 20, 1961, concluded as follows:

*"CONCLUSION*

"This is the final decision of the Contracting Officer. Decisions on disputed questions of fact and on other questions that are subject to the procedure of the Disputes Clause may be appealed in accordance with the provisions of the Disputes Clause. If you decide to make such an appeal from this decision, written notice thereof (in quint) must be mailed or otherwise furnished to the Contracting Officer within 30 days from the date you receive this decision. Such notice should indicate that an appeal is intended and should reference this decision and identify the contract by number. The Corps of Engineers Board of Contract Appeals is the authorized representative of the Head of the Department for hearing and determining such disputes. A copy of the rules of the Corps of Engineers Board of Contract Appeals is attached hereto."

On April 13, 1961, well within the 30 days referred to, supra, Kiewit wrote the Contracting Officer and, referring to this particular claim, stated:

"You are hereby notified pursuant to Title 28, Section 2675(b) of the United States Code (Annotated), that the undersigned contractor has elected to withdraw this claim from further consideration by the Corps of Engineers, Department of the Army, and to proceed against the United States pursuant to the provisions of the Federal Tort Claims Act."

Thereupon, Kiewit commenced the instant action under the Federal Tort Claims Act, 28 U.S.C.A. § 1346, for $5,374.58 plus costs. The answer, amounting to a general denial, was interposed by the United States. Thereafter the matter was tried in the United States District Court for the District of Nebraska. The District Court found in behalf of Kiewit, entering judgment in Kiewit's behalf in the amount of $5,332.-68 plus costs and disbursements. The United States appealed from such judgment.

The District Court, in effect, held that the decision of the Contracting Officer was not conclusive and that Kiewit was not required to exhaust the remedies prescribed by the contract because it found that Kiewit's claim "while having its source in contract, sounded in tort". It did not hold that the claim was not a dispute arising under the contract involving a question of fact, but held that Kiewit was free "to treat the claim either as one sounding in tort or contract", and could thus sue under the Federal Tort Claims Act, 28 U.S.C.A. § 1346,

as amended. After holding that the claim came within the purview of the Federal Tort Claims Act, the District Court found that the driver of the truck, although he received his orders from Kiewit's supervisors and was hired and could be fired by Kiewit, was nevertheless subject to the jurisdiction and control of the government at the time of the accident and concluded that he was an employee of the United States under the "loaned-servant" doctrine so that his negligence was imputed to the government. While recognizing that disputes under the contract involving questions of fact must be presented to the Contracting Officer under Article 8 and adherence had to the provisions therein for appeal and that such decision was final and conclusive unless fraudulent, capricious or arbitrary, 41 U.S.C.A. § 321, the District Court nevertheless stated:

> "It is the opinion of the court, however, that the claim here involved, while having its source in contract, sounds in tort. See Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; United States v. Huff, 5 Cir., 165 F.2d 720, 1 A.L.R. 2d 854. The guilty party thus being a tort-feasor, the suit can properly be maintained under the Federal Tort Claims Act, 28 U.S.C.A. 1346, and was properly removed from the consideration of the Corps of Engineers through notification pursuant to 28 U.S.C.A. 2675(b)."

We believe the District Court to have been in error. 28 U.S.C.A. § 2675(b) is not applicable to the situation with which we are here concerned. That section of the Federal Tort Claims Act concerns only the withdrawal of tort claims of $2500 or less which have been presented for administrative adjustment to the head of a federal agency or his designee under the provisions of the Act, 28 U.S.C.A. § 2672, and is not concerned with claims in excess of that amount arising under a contract, such as the claim filed with the Contracting Officer herein. Further the District Court's reliance on

Keifer & Keifer v. Reconstruction Finance Corporation, 1939, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784, is, we believe, also misplaced. The contract in Keifer & Keifer had no disputes clause, such as Article 8 of the contract herein. Accordingly, there was no question there of the contractor's failure to exhaust the remedies prescribed thereby. Additionally, Keifer & Keifer was rendered in 1939, well before the enactment of the Federal Tort Claims Act of 1946. The main question in that case was whether or not instrumentalities of the federal government, such as the Reconstruction Finance Corporation, and its Regionals were immune from suit. This court had held that the R. F. C., as a governmental agency, was immune. The Supreme Court reversed. In so doing, it stated at page 395 of 306 U.S., at page 521 of 59 S.Ct.:

> " * * * They [the Supreme Court and the Court of Claims] have recognized that the breach of implied duty of a lessee 'not to commit waste, or suffer it to be committed,' United States v. Bostwick, 94 U.S. 53, 68, 24 L.Ed. 65, and of a bailee not to neglect 'to exercise ordinary care and skill,' Gulf Transit Co. v. United States, 43 Ct.Cl. 183, 199, are duties that have their source in contract even though the guilty agents may be merely tort-feasors. To be sure, the common law fiction of waiving the tort and suing in assumpsit cannot be used as an evasion of the limited liability created by the Court of Claims Act. Bigby v. United States, 188 U.S. 400, 23 S.Ct. 468, 47 L.Ed. 519; United States v. Minnesota Mut. Investment Co., 271 U.S. 212, 217, 46 S.Ct. 501, 502, 70 L.Ed. 911. *But where the wrong really derives from an undertaking, to stand on the undertaking and to disregard the tort is not to invoke effective agreement. It merely recognizes a choice of procedural vindications open to the injured party.*" (Emphasis supplied.)

The District Court took the foregoing as justification for holding that there was a choice on the part of Kiewit and for jurisdiction of this claim under the Federal Tort Claims Act if Kiewit chose to base its claim thereon.

The relationship between the parties with regard to the equipment and the operating personnel was created by the contract. We believe the District Court overlooked the provisions thereof. Article 5 sets forth the contractor's responsibility and specifically excepts therefrom " * * * damage caused to plant or equipment by acts of the Government, its officers, agents or employees, in which event such damages will be the responsibility of the Government in accordance with applicable Federal laws." Article 8, the disputes clause, clearly provides that " * * * any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, * * *. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Secretary." (Emphasis supplied.) We believe it clear that the disputes clause encompassed any disputes concerning a question of fact arising under the contract, whether it was by reason of damage sustained by the equipment through the acts of the government, its officers, agents or employees or because of failure to return the equipment in good working order in accordance with the "implied duty of a lessee 'not to commit waste or suffer it to be committed' * * * and of a bailee not to neglect 'to exercise ordinary care and skill' ", supra. The disputes clause, which covers "any" factual disputes arising under the contract, necessarily includes claims that might possibly have their basis in tort, as referred to in Article 5, as well as for breach of contract. It was a question of fact under this contract whether the truck driver was an employee of Kiewit or an employee of the government under the "loaned-servant" doctrine.

American Law Institute, Restatement of the Law, Second, Agency 2d, p. 486:

"c. Generality of definition. The relation of master and servant is one not capable of exact definition. It is an important relation in that upon it depends the liability of the master to third persons and to his employees under the provisions of various statutes as well as under the common law; the relation may prevent liability, as in the case of the fellow servant rule. It cannot, however, be defined in ˗ general terms with substantial accuracy. The factors stated in Subsection (2) are all considered in determining the question, and it is for the triers of fact to determine whether or not there is a sufficient group of favorable factors to establish the relation. See comment g. If the inference is clear that there is, or is not, a master and servant relation, it is made by the court; otherwise the jury determines the question after instruction by the court as to the matters of fact to be considered." (Emphasis supplied.)

See, also Brucker v. United States, 9 Cir., 1960, 338 F.2d 427; Strangi v. United States, 5 Cir., 1954, 211 F.2d 305, 307; Evans Electrical Construction Co. v. Lozier, D.C.W.D.Mo., 1946, 68 F.Supp. 256, 262–263, appeal dismissed, 8 Cir., 162 F.2d 717.

The contract provided in Article 5 that damage to the leased equipment was to be borne by Kiewit unless caused by acts of the government or its employees and specifically placed responsibility upon Kiewit for "any damage or injury" done by its "employees". The parties also agreed that "any dispute concerning a question of fact arising under this contract which is not disposed of by agreement" shall be decided administratively and that the Contracting Officer's decision "shall be final and conclusive" unless appealed to the Secretary or his representative within 30 days. (Ar-

ticle 8.) Thus the agreement of the parties contemplated the possibility of damage to the leased equipment, allocated the responsibility for such damage between the two parties to the contract, and provided for a method of resolving any disputes concerning questions of fact arising thereunder. Having by contract agreed to the disposition of claims based on disputed questions of fact, the contractor is bound thereby and its failure to appeal within 30 days from the Contracting Officer's decision forecloses any possibility of recovery.

The Supreme Court in United States v. Holpuch Co., 1945, 328 U.S. 234, 239–240, 66 S.Ct. 1000, at page 1003, 90 L.Ed. 1192, said:

> "But Article 15 [the disputes clause] is something more than a dead letter to be revived only at the convenience or discretion of the contractor. It is a clear, unambiguous provision applicable at all times and binding on all parties to the contract. No court is justified in disregarding its letter or spirit. Article 15 is controlling as to all disputes 'concerning questions arising under this contract' unless otherwise specified in the contract. It creates a mechanism whereby adjustments may be made and errors corrected on an administrative level, thereby permitting the Government to mitigate or avoid large damage claims that might otherwise be created. United States v. Blair, 321 U.S. 730, 735, 64 S.Ct. 820, 823, 88 L.Ed. 1039 [1043]. This mechanism, moreover, is exclusive in nature. Solely through its operation may claims be made and adjudicated as to matters arising under the contract. United States v. Blair, supra, 321 U.S. 735, 64 S.Ct. 823, 88 L.Ed. 1039; United States v. Callahan Walker Const. Co., 317 U.S. 56, 61, 63 S.Ct. 113, 115, 87 L.Ed. 49 [53]. And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court.

> "It follows that when a contractor chooses without due cause to ignore the provisions of Article 15 he destroys his right to sue for damages in the Court of Claims. That court is then obliged to outlaw his claims, whatever may be their equity. To do otherwise is to rewrite the contract."

In United States v. Blair, 1944, 321 U.S. 730, at page 735, 64 S.Ct. 820, at page 823, 88 L.Ed. 1039, the court said:

> " * * * Having accepted and agreed to these provisions [disputes clause], respondent was not free to disregard them without due cause, accumulate large damages and then sue for recovery in the Court of Claims. Nor can the Government be so easily deprived of the benefits of the administrative machinery it has created to adjudicate disputes and to avoid large damage claims."

At page 736, at page 823 of 64 S.Ct.:

> " * * * [T]he appeal provisions of the contract must be exhausted before relief is sought in the courts."

At page 737, at page 823 of 64 S.Ct.:

> " * * * But here we must insist, not that respondent turn square corners, but that he exhaust the ample remedies agreed upon."

This court, in Happel v. United States, 8 Cir., 1960, 279 F.2d 88, speaking through the late Judge Gardner, said at page 91:

> " * * * The rule is well established that the procedure provided for by a clause of a Government contract requiring all disputes to be decided by the contracting officer, subject to appeal to the head of the department concerned, or his duly authorized representative, is exclusive in nature and is the sole method for making and adjudicating claims under the contract and, in the absence of some clear evidence that this pro-

cedure is inadequate or unavailable, it must be pursued and exhausted before a contractor can be heard to complain in a court."

 Even assuming, *arguendo*, that Kiewit had an election to make between pressing the claim under the disputes clause of the contract or filing suit in the District Court under the Federal Tort Claims Act, it is certain both methods could not be utilized. Having chosen to file a claim with the Contracting Officer and having waited until it received an unfavorable finding, it may not thereafter retrace its footsteps and attempt to go the other route. In Bower v. Eastern Airlines, 3 Cir., 1954, 214 F.2d 623, 626, certiorari denied, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 685, the court stated a salutary general rule:

"* * * Whether we say that the party is bound by his own voluntary election between an administrative and an alternative judicial remedy, or describe the party who, initiated the administrative proceeding as estopped from denying its agreed final and binding character, or view this as an application of the rationale of *res judicata* in a new area, we are satisfied that the court should declare and enforce a rule of repose against the reexamination of the merits of plaintiff's claim in this case."

In Boland v. Southern Ice Co., 1948, D.C.E.D.S.C., 80 F.Supp. 924, 925–926, the court well said:

"* * * the sole, pertinent inquiry in this case is whether under the facts as set forth in the complaint the plaintiff is limited to an action ex contractu or may bring an action *in tort*. I am of the opinion that *he may bring either, but not both and that having decided on one he would be debarred from attempting to bring the other*. (Emphasis supplied.)

"In an action by a bailor against a bailee the former may rely either upon the contract for the safe keeping and return of his property or bring an action alleging negligence. The law seems to be quite well settled that the bailor has the election whether to pursue a remedy for a breach of a contract or to allege a tort."

In 18 Am.Jur., Election of Remedies, § 36, it is stated:

"Contracts sometimes provide a remedy or remedies to which the parties may resort upon breach thereof. The question arises as to whether such remedies are exclusive. If the contract specifically provides that the remedies enumerated shall be the only course of settlement, a party to it is limited to the remedies mentioned. Where, however, there is no limitation in the contract which makes the remedies enumerated therein exclusive, a party is entitled to the remedies thus specified, or he may at his election pursue any other remedy which the law affords. By pursuing one of the remedies to its conclusion, he will be precluded from attempting to follow another and inconsistent one."

In 8 Am.Jur.2d, Bailments, § 281, this rule is stated:

"* * * Actions in tort or sounding in tort may also be appropriate when the bailee's violation of a duty or obligation imposed upon him by the bailment is not only a breach of the bailment contract, but also a tort. The bailor, as a general rule, may elect to affirm the contract and, waiving the tort, bring his action ex contractu, or he may abandon the contract and proceed against the bailee in an action ex delicto."

In 1 Am.Jur.2d, Actions, § 33, it is stated:

"* * * It would seem to be clear, therefore, that the plaintiff does not 'waive' the tort, but rather that he simply has an election of remedies, ex contractu or ex delicto, either of which he may pursue, but not both."

Even if Kiewit Sons' Company had an election—and we do not believe it had, having contracted such prerogative away by Article 8—it should be bound by the choice it made and the method for recovery it used.

Reversed with directions to enter judgment for the United States.