**MOJAVE ENTERPRISES, and Willis N. Horan, d/b/a Mojave Enterprises**

v.

**The UNITED STATES.**

No. 74–82C.

United States Claims Court.

Sept. 15, 1983.

J. William Bennett, Portland, Or., for plaintiff.

Helene M. Goldberg, Washington, D.C., with whom were Asst. Atty. Gen. J. Paul McGrath and Judith E. Cohn, Washington, D.C., for defendant; James Andrews, Dept. of Agriculture, Washington, D.C., of counsel.

## OPINION

WOOD, Judge:

In this action, before the court on cross-motions for summary judgment, plaintiff [1] seeks review, under the familiar standards of the Wunderlich Act, 41 U.S.C. §§ 321–22 (1976), of a decision of the Department of Agriculture Board of Contract Appeals ("the Board") denying three claims to additional compensation based primarily upon allegedly erroneous "express and detailed representations of the nature and extent of [the rock and blasting] work to be performed * * *" by plaintiff under a contract with defendant.[2]

---

[1.] As of 1972, Mojave Enterprises was a partnership, of which Mr. Horan was the managing partner. Mr. Horan subsequently became sole owner of, and successor in interest to, the partnership business. As used herein, the term "plaintiff" means either the partnership or the sole proprietorship, as may be appropriate.

[2.] *Mojave Enterprises,* AGBCA No. 75–114, 77–1 BCA (CCH) ¶ 12,337 (1977). Two claims partially allowed administratively are not in issue here.

Plaintiff contends that the Board's denial of the said claims is unsupported by substantial evidence and erroneous as a matter of law. Defendant's response is that the Board decision is free from any vitiating defect. For the reasons hereinafter appearing, it is concluded that the Board decision is supported by substantial evidence and legally correct, and is therefore deserving of finality. Accordingly, plaintiff's motion for summary judgment is denied, and defendant's cross-motion is granted. Plaintiff's complaint will be dismissed pursuant to RUSCC 58.

I

The facts stated herein were found by the Board or are otherwise properly derived from the administrative record. *See Ordnance Research Inc. v. United States,* 221 Ct.Cl. 641, 609 F.2d 462 (1979).

On October 3, 1972, the United States Forest Service, Department of Agriculture, issued an invitation for bids (IFB), together with instructions to bidders, for the construction of a 4.68 mile segment of the Pacific Crest Trail. The proposed construction site was within the Marble Mountain Wilderness Area of the Klamath National Forest, in northern California.

Among other things, the IFB advised prospective bidders that the proposed construction work was in very rough terrain, that they "should visit the site and take such other steps as may be reasonably necessary to ascertain the nature and location of the work, and the general and local conditions which can affect the work or the cost thereof," and that "Failure to do so will not relieve bidders from responsibility for estimating properly the difficulty or cost of successfully performing the work."[3]

The IFB also reflected that access to the construction site was by trail only to the beginning and ending of the project, and that it would take two days to complete a tour of the job site. Bids for trail tread and drainage excavation on the basis of a unit price per linear foot were requested. The measurement and payment provisions for trail tread and drainage excavation[4] to be included in the contract when awarded were as follows:

3. *Method of Measurement*

3.1 The linear footage of trail tread and drainage excavation, regardless of classification or volume of material encountered, to be paid for shall be the actual number of linear feet between the points of beginning and end, completed and accepted.

4. *Basis of Payment*

4.1 The linear footage measured as provided above, shall be paid for at the contract unit price per linear foot for Item T–51, 'Trail Tread and Drainage Excavation.' Payment therefore [sic] shall constitute full compensation for all materials, labor, equipment, tools and incidentals necessary to complete the item.

The IFB included "Plans for Construction Kidder Creek Segment." Those plans included a vicinity map and three sheets reflecting certain information about the proposed construction site beginning at Station 0 + 00 and extending to the end of the project at Station 247 + 15.[5] Among other things, the plans contained a number of columns, opposite which appeared, in horizontal line diagram (or bar graph) form, certain data concerning the proposed construction work. The columns included "Side Slope" and "Trail Grade" (in percentages); "Min. Trail Tread" (in inches); "Drainage Dips, Rock Drainage, [and] Switchbacks"; "Select Borrow, Trails, and

---

3. In a "Schedule of Items-Bid Schedule," prospective bidders were explicitly "cautioned to inspect the construction site * * *" before preparing a proposal. The Forest Service arranged for and conducted a "show me" trip for several prospective bidders prior to bid opening; other prospective bidders visited the site on their own.

4. Bidders were expressly informed that "No allowance will be made for classification regardless of material encountered."

5. A "station" is a linear distance of 100 feet. *E.g.,* the distance from Station 246 to Station 247 + 15 is 115 feet.

Structures"; "Clearing"; "Topography, Streams, Etc."; and "Remarks."

Without any inspection of the proposed construction site, or even any inquiry to anyone connected with the project concerning existing site conditions, but rather solely from a review of the plans attached to the IFB, plaintiff calculated and timely submitted to defendant a bid based (in pertinent part) on the amount of "rock work" it thought the proposed construction would require. Its estimate as to the amount of such "rock work" was derived from the "Topography, Streams, Etc." and "Remarks" columns.[6] Plaintiff's bid was the lowest of the seven bids received, and on November 21, 1972, it was awarded Contract No. 39–4524 ("the contract") for the construction of the 4.68 mile segment at a contract price of $83,240.05.

Had plaintiff made any site inspection, the rocky nature of the proposed construction site would have been readily apparent to it. Plaintiff's estimate as to the amount of "rock work" required to complete construction of the trail fell considerably short of the actual amount of such work it performed under the contract. Plaintiff asserted administratively that as a result of unanticipated rock work and blasting, and a consequent increase in transportation of materials, equipment and supplies to and from the construction site, its cost of performing the contract had increased by some $28,000 (not including overhead, burden, and profit).

Prior to the commencement of construction, government engineers had relocated the centerline stakes of a portion of the trail near Station 32 + 50. In doing so,

however, flagging used to identify the trail route apparently was not moved. Plaintiff subsequently constructed a short portion of the trail by following the flagging, only to discover thereafter that the trail had in fact been relocated. The contracting officer allowed plaintiff as an equitable adjustment part, but not all, of the sum claimed for the trail relocation work.[7]

## II

### A. The Rock Work and Blasting Claim

■ Before the Board, plaintiff asserted that it had reasonably relied on the plans as defining in detail the nature and extent of the rock work and blasting required under the contract, and that those plans had erroneously misrepresented the nature and extent of such work, thereby entitling plaintiff to the equitable adjustment claimed. The Board denied the "rock work" claim, holding in essence that the plans did not purport to show the amount of the rock work required to complete contract performance and therefore did not misrepresent the amount of such work to be performed; and that, if plaintiff were "misled it was because [it] unreasonably assumed that [the plans] adequately showed the rock work to be performed." *Mojave Enterprises, supra,* 77–1 BCA (CCH) ¶ 12,337 at 59,-660.[8] The rock work claim was accordingly denied in its entirety.[9] *Ibid.*

In this court, as before the Board, plaintiff insists that the plans made "express and detailed representations of the nature and extent of * * *" rock work and blasting to be performed under the contract; that plaintiff "reasonably relied" upon such "express and detailed representations" in

---

**6.** In the "Topography, Streams, Etc." column, such notations as "wet area", "rock slide", "rock point", "stream crossing", "natural bench", "rock ridge", "heavy rock work", "rock outcrop", "ridge line", "rock rib", "dry wash", "earth slide", "saddle", and "heavy rock," appeared. The "Remarks" column noted "heavy rock work" and "rocky soil with rock outcrops" at some locations within the project area. Some notations included a linear distance; others did not.

**7.** Plaintiff claimed $538.13 (plus overhead, burden, and profit); the contracting officer found that the total amount to be allowed was $360.01.

**8.** The Board also noted that had a site inspection been made, "the conditions on the ground * * * would have been apparent * * *" to plaintiff. *Mojave Enterprises, supra,* 77–1 BCA (CCH) at 59,660.

**9.** The related claim for increased transportation costs was denied for the same reasons.

preparing its bid; and that such "representations" were in fact erroneous, to plaintiff's detriment. Plaintiff concludes that the Board erred in law and fact in denying its "rock work" claim. Upon a careful review of plaintiff's arguments and the entire record in light of the strictures of the Wunderlich Act, however, the Board's conclusions cannot be faulted.

At the outset, plaintiff's claim—in essence that plaintiff encountered conditions differing materially from those "indicated" in the bid documents—turns upon an "analysis and interpretation of the contract documents, and thus presents a question of law to be decided by the court independently of the decision of the Board." *Foster Constr. C.A. v. United States,* 193 Ct.Cl. 587, 601, 435 F.2d 873, 880 (1970). There is, however, no basis here for a conclusion contrary to that reached administratively. Nothing in the bid documents could or did induce "reasonable reliance by [plaintiff] that subsurface conditions would be more favorable than those encountered." *Pacific Alaska Contractors v. United States,* 193 Ct.Cl. 850, 863–64, 436 F.2d 461, 469 (1971).

To be compensable, an asserted subsurface or latent physical condition encountered must not only differ materially from the contract "indications," but must also be reasonably unforeseeable on the basis of all the information available to the contractor at the time of bidding. *Foster Constr. C.A. v. United States, supra,* 193 Ct.Cl. at 615, 435 F.2d at 888; *Pacific Alaska Contractors v. United States, supra; John G. Vann v. United States,* 190 Ct.Cl. 546, 571–72, 420 F.2d 968, 982 (1970). On the basis of the information available to it, plaintiff's prebid assumption that the plans depicted the "rock work" (excavation and blasting) to be performed under the proposed contract in sufficient detail as to obviate any need for a site inspection (and to permit calculation of a bid without either site inspection or

even any inquiry about site conditions) was an unwarranted and unreasonable one.

■ There were no "express and detailed representations" by defendant with respect to the amount of rock work and blasting to be performed. The bid documents did not contain any indication or estimate of the quantity or quality of the excavation required to construct the trail, and specified plainly that payment would be made on a linear footage basis, whatever the material encountered. The "Topography, Streams, Etc.," column upon which plaintiff relied in submitting its bid was manifestly not intended to identify, on a bar graph having a scale of 1 inch equals 100 feet, every bit of rock work to be performed over a trail 24,715 feet long. Any notion that the plans "indicated" the amount of rock work and blasting to be performed was, as the Board held, unreasonable.

Moreover, in preparing its bid, plaintiff (a) assumed that there were absolutely no areas of light or medium rock work over the entire proposed trail site; (b) made assumptions with respect to, or disregarded entirely, the extent of even linear excavation required at rock points, rock ridges, rock slides, and rock outcrops, frequently shown on the bar graph only as points; (c) assumed that no excavation whatever would be required at any of the "natural bench" areas shown on the plans; and (d) assumed that, over the entire 4.68 mile length of the trail, no excavation would be required where rock was not shown on the plans.[10]

In assessing the reasonableness of plaintiff's reading of the plans, it is also to be remembered that the bid documents provided that payment for excavation would be made on the basis of a unit price per linear foot of trail work, regardless of the classification and volume of the material encountered. Too, they contained repeated admonitions that a bidder should inspect the construction site for itself prior to submitting a

---

10. In estimating the linear footage of excavation to be performed under the contract, plaintiff assumed that each rock point, ridge-crossing, or rock outcrop involved precisely 10 linear feet of excavation; ignored natural benches; ignored large boulders; assumed that one rock ridge involved 20 linear feet; ignored rock slides; and assumed that several hundred feet of ridge line involved no excavation.

bid. Far from acting reasonably and prudently as it contends it did, plaintiff simply ignored those admonitions, made a number of unjustifiable assumptions, and submitted its bid without any site investigation or even any inquiry concerning conditions at the proposed construction site.

"It is the rule that a contractor who knows or should have known the facts of the conditions at the site is estopped to claim a changed condition. Where he knows or has opportunity to learn the facts, he is unable to prove * * * that he was misled by the contract." *John G. Vann v. United States, supra,* 190 Ct.Cl. at 571, 420 F.2d at 982.[11] That doctrine plainly does not require that a prospective bidder " 'discover, at [its] peril, subsurface conditions hidden * * * and thus unavailable to any reasonable pre-award inspection' * * *." *Id.,* 190 Ct.Cl. at 573, 420 F.2d at 983. It does, however, buttress the conclusions that in this case plaintiff "is unable to prove * * that [it] was misled by the contract," *John G. Vann v. United States, supra,* and that any misleading that occurred was due to plaintiff's own unreasonable assumptions. *BCM Corp. v. United States,* 2 Cl.Ct. 602, 608 (1983); *see also Hunt & Willett, Inc. v. United States,* 168 Ct.Cl. 256, 264–65, 351 F.2d 980 (1964); *S.T.G. Constr. Co. v. United States,* 157 Ct.Cl. 409 (1962).[12]

The Board's denial of plaintiff's "rock work" claim (and of its related transportation costs claims) is neither legally nor factually defective when tested against the governing standards of the Wunderlich Act. Accordingly, that decision can only be upheld.

### B. The Trail Relocation Claim

■ The contracting officer determined that plaintiff was entitled to an equitable adjustment in consequence of its trail relocation claim, and that plaintiff should be allowed $360.01 of the amount claimed for this item. On appeal, the Board sustained the contracting officer's determination. In this court, plaintiff asserts that the amount allowed is less than an "equitable" adjustment.

"An 'equitable adjustment' of the amount due plaintiff on [its trail relocation claim] involves 'merely * * * inquiries of fact.' *United States v. Callahan Walker Constr. Co.,* 317 U.S. 56, 61 [63 S.Ct. 113, 115, 87 L.Ed. 49]." *Electronic & Missile Facilities, Inc. v. United States,* 189 Ct.Cl. 237, 251, 416 F.2d 1345, 1354 (1969). Plaintiff has failed to advance any sound reason for a holding that the Board's decision on this claim lacks finality. *Id.,* 189 Ct.Cl. at 252–53, 416 F.2d at 1355.

The contracting officer allowed plaintiff compensation for the maximum amount of manhours of labor even potentially lost in consequence of the "change" resulting from relocation of the trail, plus an appropriate amount for overhead, burden, and profit. The Board found that the amount allowed, quite plainly in the nature of a jury verdict, was reasonable. No valid basis for overturning that finding has been offered, or appears. *Phillips Constr. Co. v. United States,* 184 Ct.Cl. 249, 263, 394 F.2d 834, 842 (1968); *cf. S.W. Electronics Mfg. Co. v. United States,* 228 Ct.Cl. 333, 352, 655 F.2d 1078, 1089 (1981).

11. The quoted language relates to a claim of "Subsurface or latent physical conditions at the site differing materially from those indicated" in a contract, the kind asserted here. There could be, and is, no contention that "an unknown and unusual condition differing from conditions ordinarily encountered and generally recognized" existed in this case. *John G. Vann v. United States, supra,* 190 Ct.Cl. at 572, 420 F.2d at 982.

12. Any reasonable site inspection should be expected to "discover patent indications plainly, to a layman, contradicting the contract documents." *Stock & Grove, Inc. v. United States,* 204 Ct.Cl. 103, 109, 493 F.2d 629, 631 (1974).