**McCORMICK CONSTRUCTION COMPANY, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 714–85C.

United States Claims Court.

June 19, 1987.

Harry R. Silver, Washington, D.C., for plaintiff.

Carol N. Park-Conroy, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

MOODY R. TIDWELL, III, Judge:

This contract dispute comes before the court on defendant's motion for summary judgment. Plaintiff requests an equitable adjustment as the result of alleged Type I differing site conditions and also alleges concealment of information regarding site conditions by defendant. Defendant's motion for summary judgment is denied because there are genuine issues of material fact, which render summary judgment inappropriate.

## FACTS

The claim is brought by plaintiff, McCormick Construction Company, Inc. (McCormick) on behalf of its subcontractor, Western Well & Pump, Inc. (Western). On February 14, 1984, Contract No. DACA63-84-C-0064, in the amount of $1,876,507.50, was awarded to McCormick by the United States Army Corps of Engineers (Corps). The contract, in part, required the drilling of three water wells, Frenchy 1, Frenchy 2, and Escondido 1 (F1, F2 and E1) at a site 15 miles southwest of the Holloman Air Force Base, Alamogordo, New Mexico. Plaintiff subcontracted with Western to do the drilling of the three water wells to depths of 900 feet, 725 feet and 1,025 feet respectively, for a contract price of $478,450.

Plaintiff alleges that Western experienced unforeseen difficulties at the site as the result of alleged Type I differing site conditions encountered while drilling the wells. Under Paragraph 4 of the contract General Provisions, a contractor is entitled to an equitable adjustment for Type I differing site conditions when "subsurface or latent physical conditions ... diff[er] materially from those indicated in the contract." General Provisions ¶ 4(a). The bidder's site investigation and adequacy of the contract documents both go to the heart of the conflict in determining whether plaintiff encountered Type I materially differing site conditions. The site investigation revealed an alluvial fan formed by erosion and outwashes from the Sacramento mountains. Numerous rock outcrops and boulders were also visible on the surface. The alleged deficient contract bid documents included a driller's log prepared by R.L. Guffey & Co. (Guffey) and six boring logs prepared by Daniel Engineering, Inc. and Rady & Associates. The Guffey driller's log that appeared in the contract bid documents was one of two required in a contract awarded Guffey by the Holloman Air Force Base Engineers' Office to drill test holes at the F1, F2 and E1 sites. Guffey was also required to furnish a geophysical (electric) log. Mr. Roy F. Senior, Jr., President of Western, reviewed the driller's logs, the boring logs and undertook a site investigation prior to submitting his bid for the drilling subcontract. Plaintiff anticipated it would take 24 days to drill the wells, instead it took seven weeks. Plaintiff's drilling difficulties are represented by the 22 "twist-offs" experienced while drilling when trade standards suggest that one per 10,000 feet drilled is extraordinary.

Plaintiff also claims that defendant actively concealed or had superior knowledge of information that would have alerted plaintiff to the subsurface conditions. Despite plaintiff's requests, certain logs were not made available until after bids were submitted. Plaintiff states that he was told by defendant that such records did not exist. Defendant contends there was no conscious effort to conceal test drill information, and further asserts that any unobtained information was not essential for an adequate evaluation of subsurface conditions.

On November 20, 1984, plaintiff submitted a formal claim to the Corps requesting reimbursement of the $451,254.38 for additional costs resulting from differing site conditions. On May 17, 1985, plaintiff's claim was denied.

## DISCUSSION

The present case comes before this court on defendant's motion for summary judgment. Summary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *South Louisiana Grain Services, Inc. v.*

*United States*, 1 Cl.Ct. 281, 289 (1982); RUSCC 56(c).

### A. *Type I Differing Site Condition*

■ In order to prevail upon its Type I differing site condition claim, plaintiff must demonstrate that the conditions indicated in the contract documents differ materially from those encountered by Western during performance. *P.J. Maffei Building Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed.Cir.1984); *Clark v. United States*, 5 Cl.Ct. 447, 452 (1984), *aff'd.* 770 F.2d 180 (Fed.Cir.1985); *Mojave Enters. v. United States*, 3 Cl.Ct. 353, 356 (1983). In order to determine, as a matter of law, whether Western's interpretations of the contract indications are reasonable, the court must place itself "into the shoes of a 'reasonable and prudent' contractor." *P.J. Maffei* at 917 (citing *H.N. Bailey & Assocs. v. United States*, 196 Ct.Cl. 156, 163, 449 F.2d 387, 390 (1971), and *Hegeman-Harris & Co. v. United States*, 194 Ct.Cl. 574, 589, 440 F.2d 1009, 1016 (1971)). At this point, the court is of the opinion that it is unclear as to whether a pre-bid site investigation should have indicated, to a "reasonable and prudent" contractor, the subsurface conditions encountered by plaintiff. Each party has offered its own interpretation of the site investigation for evaluating subsurface conditions, which is supported by affidavits and documentation. Defendant contends that surface conditions are determinative of subsurface conditions and that as a "reasonable and prudent" contractor, plaintiff had notice to anticipate difficult conditions, particularly in view of the presence of numerous rock outcrops and boulders in the alluvial fan. Plaintiff counters that it is reasonable for a contractor not to rely on the existence of surface boulders to indicate subsurface conditions even in the alluvial fan. The plaintiff further asserts that even if surface boulders indicated subsurface boulders, the extraordinary drilling difficulties resulted from concentrations of nested and overlapping boulders which could not have been anticipated from a site investigation. In view of the parties' con-

flicting affidavits, the court needs to consider expert testimony and other relevant information before ruling on this matter.

Another genuine issue of material fact relates to whether the Guffey and Rady boring logs were sufficient for an accurate pre-bid evaluation of subsurface conditions. Defendant contends that given the contract bid logs, it would have been nearly impossible for a reasonable contractor to be unaware of the probability of difficult drilling conditions. Defendant argues that the Guffey logs are of the character and quality typical for water well drillers and that the purpose of the Guffey drill tests was to evaluate the water producing potential of underground formations in the site area, not to prepare a scientific analysis of subsurface conditions. Additionally, the six boring logs revealed two cave-ins and two uncompleted borings due to subsurface conditions. In response, plaintiff asserts that bidders routinely compute their bid, not upon the basis of their own pre-award surveys or investigations, but upon the basis of what the government has indicated and shown in contract specifications and on the drawings. Plaintiff alleges that the Guffey logs are deficient, completely uninformative and not typical for water well drillers.[1] Plaintiff maintains that the lack of information in the Guffey logs was misleading and that the unexpected difficulties encountered while drilling were impossible to foresee. Plaintiff also states that the Rady borings were drilled to a depth of 10 feet and of little significance because the water wells were to be drilled nearly 100 times deeper. Although the court finds that plaintiff's assertions amount to a reasonable showing that contradicts the material factual contentions proffered by the defendant regarding the Guffey logs, the court notes that the burden on the plaintiff to show the existence of a genuine dispute about a material fact is not a stringent one. *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983).

### B. *Superior Knowledge*

■ Plaintiff also claims that defendant possessed superior knowledge about sub-

---

**1.** Although the logs fail to indicate the length of time it took to drill the holes, there is no docu-

mentation of difficulties or drill delay, except for the notation of "lost circulation."

surface conditions. Superior knowledge is generally defined as "knowledge which is vital to performance of the contract but which is unknown and is not reasonably available to bidders who are thereby misled." *Utility Contractors, Inc. v. United States*, 8 Cl.Ct. 42, 52 (1985), *aff'd.*, 790 F.2d 90 (Fed.Cir.1986) *cert. denied*, —— U.S. ——, 107 S.Ct. 104, 93 L.Ed.2d 53 (1986). Defendant asserts, with supporting affidavits, that any unobtained information may have been helpful, but not vital for a reasonable evaluation of subsurface conditions. Plaintiff argues that the Quality Assurance Evaluation logs and drill rate logs give information regarding difficulties, drill delays and length of drill time per distance. It is unclear to the court at this stage of the proceedings whether the information in the Quality Assurance Evaluator and drill rate logs was vital to the performance of the contract and whether this information was made reasonably available to contractors.

Plaintiff also alleges concealment by defendant of drill information when certain boring logs were requested. Defendant contends that plaintiff's allegation cannot be attributed to an unknown individual and that although the logs were not made available to plaintiff, there was no conscious effort by defendant to conceal. Although the information regarding this allegation is insufficient, plaintiff's concealment claim should not be summarily dismissed because "inferences to be drawn from the ... facts ... must be viewed in the light most favorable to the party opposing the motion" for summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Ball v. United States*, 1 Cl.Ct. 180, 183 (1982).

## CONCLUSION

After a careful examination of the record, and with due consideration of the law, it is the opinion of this court that genuine issues of material fact exist, and the action is not ripe for summary judgment. Thus, defendant's motion for summary judgment must be denied.